In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00178-CR


______________________________




JOE BRADSHAW, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 03F0153-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 One evening in early September 2005, Joe Bradshaw had been visiting his estranged wife,
Toy Bradshaw. (1) That visit, like other encounters between the two, had resulted in Toy and Bradshaw
arguing. As Bradshaw was about to leave and in response to a specific question by Bradshaw of
whether Toy had had any improper relationships with men with whom she worked, she admitted that
she had. In response, Bradshaw stabbed Toy forty-eight times, killing her. 

 Charged with murder, Bradshaw argued during the guilt/innocence phase of trial that he was
legally insane at the time of the murder. The jury rejected this argument and found him guilty of
murder. During the punishment phase, Bradshaw argued he was acting under the immediate
influence of sudden passion arising out of adequate cause. The jury declined to find that Bradshaw
was acting under the influence of such sudden passion and assessed fifty years' imprisonment as his
punishment.

 On appeal, Bradshaw asserts that not requiring jury unanimity in finding no sudden passion
was fundamental error, that the exclusion of Raymond Whitten's testimony was error, and that the
evidence   concerning   sudden   passion   was   insufficient.   We   affirm   the   judgment   because
(1) Bradshaw has failed to show that jury charge error resulted in egregious harm, (2) erroneously
excluding Whitten's testimony was harmless, and (3) the evidence is legally and factually sufficient
to support the jury's finding on sudden passion.


(1) Bradshaw Has Failed to Show That Jury Charge Error Resulted in Egregious Harm

 In his first three points of error, (2) Bradshaw claims the jury charge is erroneous because it does
not require a unanimous verdict on the issue of sudden passion. If a defendant is convicted of
murder, he or she may argue at punishment that he or she caused the death of the victim while under
the immediate influence of sudden passion arising from an adequate cause. Tex. Penal Code Ann.
§ 19.02 (Vernon 2003). If a defendant establishes by a preponderance of the evidence that he or she
did so, the offense level is reduced from a first-degree to a second-degree felony. Id.; Trevino v.
State, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003). "'Sudden Passion' means passion directly
caused by and arising out of provocation by the individual killed or another acting with the person
killed which passion arises at the time of the offense and is not solely the result of former
provocation." Tex. Penal Code Ann. § 19.02. "Adequate cause" means "cause that would
commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper,
sufficient to render the mind incapable of cool reflection." 

 Article 37.07 of the Texas Code of Criminal Procedure requires a jury finding on sudden
passion to be unanimous, whether that finding is that the defendant did, or did not, act under the
influence of sudden passion. Sanchez, 23 S.W.3d at 34; see Tex. Code Crim. Proc. Ann. art. 37.07
(Vernon 2006).

 Although the jury charge before us requires a unanimous affirmative finding on sudden
passion, Bradshaw argues the jury charge does not require a unanimous finding against sudden
passion. The jury charge in this case provided, in pertinent part, as follows:

 Now, if you find by a preponderance of the evidence that the defendant, Joe
Bradshaw, caused the death of Toy Bradshaw while under the immediate influence
of sudden passion arising from an adequate cause, you shall so state in Verdict #1 the
forms of verdict.


 . . . .

 If you do not find by a preponderance of the evidence that the defendant, Joe
Bradshaw, caused the death of Toy Bradshaw while under the immediate influence
of sudden passion arising from an adequate cause, you shall so state in Verdict #1 of
the forms of verdict. 

(Emphasis added.) In the final paragraph, the charge in this case instructs the jurors that the
"verdict must be by a unanimous vote of all members of the jury."

 In Sanchez, the trial court explicitly instructed the jury to assess the punishment range for
murder if jurors could not unanimously agree that the defendant acted under the influence of sudden
passion. Sanchez, 23 S.W.3d at 34. The trial court instructed the jury, "An affirmative ('yes') answer
on the issue [of sudden passion] submitted must be unanimous, but if the jury is not unanimous in
reaching an affirmative answer, then the issue must be answered 'no.'" Id. at 35-36 (Keller, J.,
concurring). The jury instruction in the case before us is not as explicit as the one at issue in Sanchez
on the point of whether it requires unanimity for a negative finding. Given the less explicit nature
of the instruction before us, the question for us is whether the general unanimity instruction at the
conclusion of the evidence is sufficient to adequately inform the jury that its finding of no sudden
passion must have been unanimous.

 The instruction here, concerning a lack of sudden passion, is stated in the negative. Rather
than instructing the jury that it must unanimously find the defendant did not act under the influence
of sudden passion to apply the first-degree felony punishment range, the jury instruction provides
"if you do not find . . ." then the first-degree felony punishment range applies. The punishment
instruction instructs the jury to unanimously decide if sudden passion applies. If the jury cannot so
unanimously decide, it falls back on the first-degree felony punishment range. Thus, a disagreement
results in the first-degree felony punishment range rather than a mistrial.

 The charge in this case is essentially equivalent to the charge found to be erroneous in
Newton v. State, 168 S.W.3d 255, 258 (Tex. App.--Austin 2005, pet. ref'd). The charge in Newton
provided:

 The punishment which you may assess is confinement in the Institutional Division
of the Texas Dept. of Criminal Justice for life, or for any term of not more than 99
years or less than 5 years; unless you believe that the defendant caused the death
under the immediate influence of a sudden passion arising from an adequate cause
in which event you may assess confinement for not more than 20 years or less than
2 years. In addition, in either case, a fine not to exceed $10,000 may be imposed. 
The burden of proof is on the defendant to prove this issue by a preponderance of the
evidence.


 . . . . 

 Now if you believe by a preponderance of the evidence that the defendant caused the
death of the deceased while under the immediate influence of sudden passion arising
from an adequate cause, you will assess punishment at confinement for not more than
20 years nor less than 2 years and you may impose a fine not to exceed $ 10,000.

Id. at 256-57. The final paragraph of the charge in Newton instructed the jurors to select a
foreperson "to preside at your deliberations and to vote with you in arriving at a unanimous verdict." 
Id. at 257. The Austin Court of Appeals noted that, under Sanchez, a mistrial must be declared if
the jurors failed to agree on sudden passion. Because the instruction did not condition the use of the
five-to-life punishment range on a unanimous finding that the appellant did not act under the
influence of sudden passion, the court found the charge to be erroneous. Id. 

 This Court distinguished Newton in Barfield v. State, 202 S.W.3d 912, 917 (Tex.
App.--Texarkana 2006, pet. ref'd). In Barfield, this Court held the submission of sudden passion
as a special issue was an "important distinction" from Newton. The first verdict form in Barfield
asked:

 Do you, the jury, find by a preponderance of the evidence that on the occasion in
question, at the time of the commission of the offense for which the defendant,
Arnold Barfield, III, caused the death of Rickey Burns, while he, Arnold Barfield, III,
was under the immediate influence of sudden passion arising from adequate cause?


Id. The jury answered the first verdict form, "no." Agreeing with the reasoning of the Tyler Court
of Appeals, this Court held the general instruction--in combination with the special issue "asking
only whether [the jury] found Barfield acted under the immediate influence of sudden passion"--was
sufficient to guarantee a unanimous finding. Id. at 918 (citing Latham v. State, No. 12-05-00146-CR, 2006 Tex. App. LEXIS 6521 (Tex. App.--Tyler July 26, 2006, pet. ref'd) (mem. op., not
designated for publication)). The Amarillo Court of Appeals has agreed that a general instruction
in combination with a special issue on sudden passion assures a unanimous verdict. See Cartier v.
State, 58 S.W.3d 756, 759-60 (Tex. App.--Amarillo 2001, pet. ref'd).

 The State argues this case is more similar to Barfield than to Newton. According to the
State, the verdict forms in this case ensure the jury's verdict was unanimous in a way similar to
Barfield. However, the issue of sudden passion was not submitted to the jury as a special issue in
this case. The verdict forms provide as follows:

 We, the jury, having found the defendant, Joe Bradshaw, guilty of murder, do further
find that the defendant murdered Toy Bradshaw while under the immediate influence
of sudden passion arising from an adequate cause and assess his punishment at
confinement for _______ in the correctional Institutions Division of the Texas
Department of Criminal Justice. (Any term of not more than 20 years or less than 2
years.) In addition, we assess a fine in the amount of $ _________. ($0-10,000.00).


 . . . .


 We, the jury, having found the defendant, Joe Bradshaw, guilty of murder do not find
that the defendant murdered Toy Bradshaw while under the immediate influence of
sudden passion arising from adequate cause and assess his punishment at
confinement for _______ in the correctional Institutions Division of the Texas
Department of Criminal Justice. (Life or any term of not more than 99 years or less
than 5 years.) In addition, we assess a fine in the amount of $ _________. 
($0-10,000.00).

The State argues the charge in Newton is distinguishable because the verdict form in Newton
"erroneously conditioned the use of the first degree felony punishment range on the absence of a
finding in Newton's favor." We disagree the verdict form in this case does not condition the
punishment range on the absence of a finding. Unlike Barfield, which had a special issue on sudden
passion, the verdict forms in this case do not require the jury to provide an explicit affirmative or an
explicit negative ruling on sudden passion. The issue of sudden passion is subsumed in each
question. Further, the issue is presented to the jury in an identical manner as the charge. The verdict
form presents the lack of sudden passion in the negative. The jury is not asked to find a lack of
sudden passion, but rather is merely instructed to assess the first-degree felony punishment range if
it does not find Bradshaw acted with sudden passion. Unlike Barfield, the verdict forms do not
prevent the charge from being erroneous.

 The question of unanimity could be avoided altogether if the sudden passion special issue
was submitted to the jury as well as an accompanying unanimity instruction for both an affirmative
or a negative finding. See Curry v. State, 222 S.W.3d 745, 752-53 (Tex. App.--Waco 2007, pet.
ref'd). Compare Sanchez, 23 S.W.3d at 34, with Barfield, 202 S.W.3d at 917. In this case, there was
no special issue on sudden passion, nor was there an accompanying instruction that a negative
finding must be unanimous. There is no discernible difference between the jury charge in this case
and the jury charge in Newton. The instructions and verdict forms in this case, while not identical,
are equivalent. In Newton, the trial court used the phrase "unless you find"; the charge in this case
provides "if you do not find." These two phrases are roughly equivalent. The Waco Court of
Appeals has found a similar jury charge, in the absence of a special issue on sudden passion, to be
erroneous. See Curry, 222 S.W.3d at 753. The jury charge was erroneous.

 Because Bradshaw did not object to the jury charge at trial, he must show egregious harm in
order for the error to be reversible. When error occurs in failing to properly instruct the jury, our
review of the charge is under the Almanza standard. Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1984) (op. on reh'g). An erroneous or incomplete jury charge does not result in
automatic reversal of the conviction or punishment. Abdnor v. State, 871 S.W.2d 726, 731 (Tex.
Crim. App. 1994). Instead, the appellate court "must determine whether sufficient harm resulted
from the error to require reversal." Id. at 731-32; Almanza, 686 S.W.2d at 171. The level of harm
an appellant must demonstrate as having resulted from the erroneous jury instruction depends on
whether the appellant properly objected to the error at trial. Abdnor, 871 S.W.2d at 732. If the error
was not preserved, reversal is not required unless "the error is so egregious and created such harm
that he 'has not had a fair and impartial trial'--in short 'egregious harm.'" Almanza, 686 S.W.2d at
171; see Rudd v. State, 921 S.W.2d 370, 373 (Tex. App.--Texarkana 1996, pet. ref'd).

 "Egregious harm" consists of errors affecting the very basis of the case or that deprive the
defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or
punishment clearly and significantly more persuasive. Saunders v. State, 817 S.W.2d 688, 692 (Tex.
Crim. App. 1991); Boones v. State, 170 S.W.3d 653, 660 (Tex. App.--Texarkana 2005, no pet.). 
Citing Sanchez, Bradshaw argues the charge causes egregious harm because it allows the jury to
access the first-degree felony punishment without a unanimous finding on sudden passion. Sanchez
is clearly distinguishable on the question of harm. In Sanchez, the defendant presented evidence that
the jury verdict was not unanimous. When asked by the trial court whether the decision was
unanimous, three jurors indicated they wanted to find in the appellant's favor. Sanchez, 23 S.W.3d
at 32. In this case, it is mere speculation whether the verdict was unanimous that there was no
sudden passion.

 In Newton, the Austin Court of Appeals applied the "some harm" standard of Almanza and
concluded the error was harmful. Unlike Newton, the error in this case was not preserved. 
Therefore, we must apply the egregious-harm standard. In Curry, the Waco Court of Appeals found
Curry had not shown egregious harm because (1) nothing in the record indicated the verdict was not
unanimous, (2) the instructions included a general statement that the verdict must be unanimous, and
(3) Curry's main defensive theory at trial was self-defense. Curry, 222 S.W.3d at 753.

 Similar to Curry, the jury instructions in this case included a general statement that the
verdict must be unanimous. Further, the record contains no evidence that the jury's verdict was not
unanimous. As such, the argument that the verdict may not have been unanimous is pure
speculation. The degree of harm demonstrated by an appellant must be actual, not merely
theoretical. Almanza, 686 S.W.2d at 174; Taylor v. State, 146 S.W.3d 801, 804 (Tex.
App.--Texarkana 2004, pet. ref'd). Because the charge contained a general unanimity instruction
and there is no evidence that the verdict was not actually unanimous, the error was not so egregious
as to vitally affect a defensive theory or make the case for conviction or punishment clearly and
significantly more persuasive. Any harm in this case is purely theoretical. Bradshaw has failed to
show the error resulted in egregious harm.

(2) Erroneously Excluding Whitten's Testimony Was Harmless

 Bradshaw also argues the trial court erred by excluding the testimony and notes (3) of Whitten. 
Whitten, a licensed counselor, had counseled Bradshaw just hours before the murder. At the
guilt/innocence phase of the trial, (4) the defense called Whitten as a witness. After allowing the
defense to make an offer of proof outside the presence of the jury, the trial court ruled the testimony
was inadmissible. The trial court held that, even if the evidence was relevant, the potential prejudice
outweighed the probative value of the evidence.

 We review the trial court's decision to admit or exclude evidence under an abuse of discretion
standard. See Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996); Montgomery v. State,
810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). We will not reverse a trial court whose ruling was
within the "zone of reasonable disagreement." Green, 934 S.W.2d at 102; Montgomery, 810 S.W.2d
at 391 (op. on reh'g). 

 The Texas Rules of Evidence generally favor the admission of all relevant evidence at trial. 
"All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by
these rules, or by other rules prescribed pursuant to statutory authority." Tex. R. Evid. 402. 
"Relevant evidence" means "evidence having any tendency to make the existence of any fact that is
of consequence to the determination of the action more or less probable than it would be without the
evidence." Tex. R. Evid. 401.

 The State argues Whitten's testimony is wholly irrelevant to any issue in this case. "In
determining whether evidence is relevant, courts look to the purpose for offering the evidence and
whether there is a direct or logical connection between the offered evidence and the proposition
sought to be proved." Reed v. State, 59 S.W.3d 278 (Tex. App.--Fort Worth 2001, pet. ref'd). 
Bradshaw argues that the evidence "goes directly to Bradshaw's state of mind the day of, and only
hours before, the murder." Because insanity and sudden passion were facts of consequence,
Bradshaw's state of mind was relevant at both the guilt/innocence phase and the punishment phase. 
During the offer of proof, Whitten testified he had met with Bradshaw six times on an individual
basis and three times "in group." Whitten concluded that Bradshaw had an anger problem and that
the goals of the counseling sessions were to help him resolve his difficulties with anger. According
to Whitten, Bradshaw's anger resulted in him having "an attitude of wanting to control everything
in his environment, especially his children and his wife." Whitten had recommended that Bradshaw
see a physician for help in sleeping. Whitten denied telling Bradshaw to try to save his marriage or
ask his wife for a date. Whitten testified to having talked 

 in general terms of if you are going to establish a relationship it needs to be done
from a position of someone that is wanting to show love and caring. Since they were
separated at the time, he would need to be requesting from her her presence or a date,
if you would put it that way.


Construed liberally, this testimony provides some insight into Bradshaw's state of mind at the time
of the murder. The evidence is relevant.

 Evidence deemed relevant may nonetheless be excluded under Rule 403 if its probative value
is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading
the jury, or by considerations of undue delay or needless presentation of cumulative evidence. Tex.
R. Evid. 403; Mozon v. State, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999). Evidence is
unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper
basis, commonly, but not necessarily, an emotional one. See Mozon, 991 S.W.2d at 847 n.7; Torres
v. State, 794 S.W.2d 596, 600 (Tex. App.--Austin 1990, no pet.). In conducting a Rule 403
balancing test, a trial court should consider the following factors: (a) the probative value of the
evidence; (b) the potential of the evidence to impress the jury in some irrational, but nevertheless
indelible way; (c) the time the proponent needs to develop the evidence; and (d) the proponent's need
for the evidence. Shuffield v. State, 189 S.W.3d 782 (Tex. Crim. App. 2006). Rule 403's balancing
test carries a presumption that relevant evidence will be more probative than prejudicial. See
Rayford v. State, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003); Williams v. State, 958 S.W.2d 186,
196 (Tex. Crim. App. 1997).

 The probative value of the evidence weakly favors its admissibility. Although we disagree
with the State's position that the evidence is wholly irrelevant, we acknowledge that the relevance
of Whitten's testimony is marginal at its strongest. Whitten's testimony focuses almost exclusively
on Whitten's advice to Bradshaw. Any insight into Bradshaw's state of mind must be inferred. 
Nonetheless, this fact does slightly favor admissibility.

 The potential of the evidence to impress the jury in some irrational manner weakly favors its
exclusion. Bradshaw informed the trial court that Whitten was not being called as an expert witness,
but rather as a fact witness. (5) Regardless, the jury might equate Whitten's testimony with expert
testimony. Further, the fact that Whitten uses Christian teachings in his counseling practice might
unduly influence members of the jury with similar religious convictions to view Bradshaw in a more
favorable light, or might influence those with a contrary view to unduly disfavor the testimony. The
risk of Whitten's testimony being improperly considered as expert testimony, as well as the injection
of religion, might have a lasting irrational effect on the jury. This factor provides some support for
the trial court's ruling.

 The time needed to develop the evidence favors admission. Bradshaw argues that the eight
pages of testimony represents a very small portion of the evidence presented. Although we can
reasonably assume the testimony would have been longer if made in the presence of the jury, the
record indicates the testimony would not have been lengthy. Given the overall length of the trial,
we agree with Bradshaw that the time necessary to develop the evidence is relatively small. This
factor does not provide support for the trial court's decision.

 The last factor, the proponent's need for the evidence, slightly favors its admission. Whitten's
testimony, although of marginal relevance and not the only testimony regarding Bradshaw's state of
mind, was some evidence of Bradshaw's state of mind at the time of the murder. Other than the
expert testimony, Whitten's testimony was the only evidence presented during the guilt/innocence
phase of trial tending to demonstrate Bradshaw's state of mind before the murder. This factor weakly
favors admissibility.

 Rule 403 requires the danger of unfair prejudice to "substantially outweigh" the probative
value of the case. It is not enough that there be merely some danger of unfair prejudice. The only
factor that weighs against admitting the testimony is that the testimony might impress the jury in
some irrational manner. The concern that jurors might irrationally favor or disfavor Bradshaw due
to his choice to seek help from a Christian counselor is much too weak to "substantially outweigh"
the probative value of the testimony. The decision to exclude Whitten's testimony in its entirety is
not within the zone of reasonable disagreement. The trial court abused its discretion by excluding
Whitten's testimony in its entirety.

 The parties agree that the nonconstitutional harm analysis applies here, in which the error
must be disregarded if it does not "affect the defendant's substantial rights." See Tex. R. App. P.
44.2(b); Hall v. State, 13 S.W.3d 115, 119 (Tex. App.--Fort Worth 2000, pet. ref'd). An error
affects a "substantial right" of the defendant when the error has a substantial and injurious effect or
influence in determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App.
1997). A criminal conviction will not be reversed for nonconstitutional error if the appellate court,
after examining the record as a whole, "has fair assurance that the error did not influence the jury,
or had but a slight effect." Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see also
Tex. R. App. P. 44.2(b).

 We disagree with Bradshaw's assertion that the error prevented the jury from gaining insight
into Bradshaw's state of mind at the general time of the murder. Whitten's testimony is, at best, of
marginal probative value. Whitten's proffered testimony was not extensive, being contained in eight
pages of record. In that testimony, though he did say he counseled with Bradshaw just hours before
the murder, he actually testified to little else of import, and said nothing about any observations he
might have made of Bradshaw's state of mind that day, the principal basis for Bradshaw's argument
in favor of admitting Whitten's testimony. Much of Whitten's testimony was about what he told
Bradshaw, not of Bradshaw's probable state of mind at the time.

 Tom Wright provided expert testimony for the defense at the guilt/innocence phase
concerning Bradshaw's sanity at the time of the offense. Wright's testimony was considerably more
direct and probative than the tangentially relevant testimony of Whitten. Wright prepared an
extensive report on Bradshaw, and this report is in evidence and was available to the jury. The
report, as well as Wright's testimony, was based on a battery of tests and an extensive history of
Bradshaw. Wright opined that Bradshaw had "intermittent explosive disorder" and that he could
respond to certain situations by "bypassing conscious deliberation."

 At punishment, Bradshaw personally testified concerning his state of mind. Whitten's
testimony was not critical to Bradshaw's defense. Further, as discussed below, there is ample
evidence that Bradshaw did not act under the influence of sudden passion arising out of adequate
cause. We conclude the error had no more than a slight effect. The error in excluding Whitten's
testimony in its entirety was harmless.

(3) The Evidence Is Legally and Factually Sufficient to Support the Jury's Finding on Sudden
Passion


 Bradshaw finally argues the evidence is insufficient to support the jury's conclusion he was
not acting under the influence of sudden passion arising from an adequate cause. Bradshaw argues
that his testimony on the issue is uncontested and that there is no evidence inconsistent with or
conflicting with his testimony. The State argues the evidence shows Bradshaw was merely "a
violent, controlling wife-beater who brutally killed his wife because she dared to leave him." 

 Bradshaw had the burden to prove the sudden-passion issue by a preponderance of the
evidence at the punishment phase. See Tex. Penal Code Ann. § 19.02; Sanchez, 23 S.W.3d at 35. 
The State was not required to negate the existence of sudden passion; the appellant had the burden
of proving it by a preponderance of the evidence. Trevino v. State, 157 S.W.3d 818 (Tex.
App.--Fort Worth 2005, no pet.). We review a challenge to the sufficiency of the evidence, on an
issue the defendant had the burden of proof at trial, under the same standard applied in civil cases. 
Cleveland v. State, 177 S.W.3d 374 (Tex. App.--Houston [1st Dist.] 2005, pet. ref'd); Howard v.
State, 145 S.W.3d 327, 333 (Tex. App.--Fort Worth 2004, no pet.); cf. Ballard v. State, 161 S.W.3d
269 (Tex. App.--Texarkana 2005), aff'd, 193 S.W.3d 916 (Tex. Crim. App. 2006). A legal
sufficiency challenge to the evidence supporting a negative finding on sudden passion involves two
steps. "First, the record must be examined for evidence that supports the finding, while ignoring all
evidence to the contrary." Howard, 145 S.W.3d at 334; see Cleveland, 177 S.W.3d at 387. "Second,
if there is no evidence to support the finding, then the entire record must be examined to see if the
contrary proposition is established as a matter of law." Howard, 145 S.W.3d at 334; see Cleveland,
177 S.W.3d at 387. 

 We review a challenge to the factual sufficiency of the evidence on sudden passion using the
same standard of review as a challenge to the rejection of an affirmative defense. See Naasz v. State,
974 S.W.2d 418, 421 (Tex. App.--Dallas 1998, pet. ref'd). That standard requires us to consider all
of the evidence in a neutral light and determine whether the verdict is so against the great weight and
preponderance of the evidence as to be clearly wrong or manifestly unjust. Trevino, 157 S.W.3d at
821; see also Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). We are to afford "due
deference" to a jury's determinations. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App.
2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We must reach "a high
level of skepticism" before reversing a jury's verdict on this basis. Roberts v. State, 220 S.W.3d 521
(Tex. Crim. App. 2007).

 According to Bradshaw, his testimony that he acted under the influence of sudden passion
is uncontested and there is no evidence inconsistent with or conflicting with his testimony. 
Bradshaw testified as follows:

 [Defense Counsel]: When you went over there, during the time that you were
taking care of the boys, did you intend to hurt anyone?


 [Bradshaw]: No sir, I did not.

 . . . .

 [Defense Counsel]: What happened after the boys went to bed?

 [Bradshaw]: Toy had come out and started watching TV on the couch before Sam
fell asleep, and she and I just sat on the couch and watched TV and talked about
everything under the sun.

 . . . .

 [Defense Counsel]: Okay. Was there a time that you decided to leave?

 [Bradshaw]: Well, I mean, I decided to leave.

 [Defense Counsel]: Were you and she arguing at that time?

 [Bradshaw]: Yes, sir, we were.

 [Defense Counsel]: Did she ask you to leave?

 [Bradshaw]: She did.

 [Defense Counsel]: And did you get up and start to walk out?

 [Bradshaw]: I did.

 . . . .

 [Defense Counsel]: Did you then turn around and talk to her?

 [Bradshaw]: She said something to me as I was getting up.

 [Defense Counsel]: And what did she say?

 [Bradshaw]: I had asked her why she hadn't gone ahead and filed for divorce. You
know, I really couldn't understand that. I didn't understand what we were doing. 
And, I mean, I just expressed concern. I just couldn't understand why she hadn't --
why she hadn't filed.


 [Defense Counsel]: Was there any talk of her infidelity?

 [Bradshaw]: There was some talk of that.

 [Defense Counsel]: What is the next thing you remember happening?

 [Bradshaw]: I asked her if she had had any improper relationships with any men
that she had worked with.


 [Defense Counsel]: Did she deny that?

 [Bradshaw]: No, sir. She told me that she did.

 [Defense Counsel]: And did that make you angry?

 [Bradshaw]: It did. It did.

 [Defense Counsel]: What happened next?

 [Bradshaw]: I lunged at her. I lunged at her.

 [Defense Counsel]: Did you hit her?

 [Bradshaw]: I'm sure I did. I don't remember striking her. I remember lunging at
her.


 [Defense Counsel]: Okay what is the next memory you have?

 [Bradshaw]: I remember my motion light coming on at my house. I remember --
I remember staring at my console light in my truck, my dash lights for a moment. I
remember seeing myself covered in blood.

The record contains only circumstantial evidence negating sudden passion. The evidence in the
record showed Bradshaw had previously been physically violent with Toy as well as with a previous
wife. The jury also heard evidence that Bradshaw had been a controlling spouse. Further, the jury
heard the 9-1-1 call wherein Bradshaw calmly admitted to stabbing his wife. 

 Examining the entire record, we are unable to conclude that sudden passion is established
as a matter of law. The only other witness to the confrontation, Toy Bradshaw, is dead. "The jury
was free to make its own determination of appellant's credibility and reject appellant's version of
events if it did not believe he was telling the truth." Trevino, 157 S.W.3d at 822.

 Further, the jury could have concluded Bradshaw's actions did not arise from an adequate
cause, even if it believed Bradshaw's version of the events. The jury could have concluded that
telling an estranged spouse about an extramarital relationship would not commonly produce in a
person of ordinary temper a degree of anger, rage, resentment, or terror sufficient to render the mind
incapable of cool reflection. One would think that husbands and wives of ordinary temper, whether
or not living together at the time, could discover a spouse's infidelity without murdering their spouse. 
The evidence is legally sufficient.

 The evidence is also factually sufficient. The jury was presented with considerable evidence
of prior domestic abuse by Bradshaw. On one occasion, Bradshaw knocked out several of Toy's
teeth. In addition, the jury was presented with evidence of Bradshaw's controlling and violent nature. 
The jury's conclusion Bradshaw was not under the influence of sudden passion arising from an
adequate cause is not clearly wrong or manifestly unjust. The evidence is legally and factually
sufficient.





 We affirm the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 10, 2007

Date Decided: December 3, 2007


Publish

1. Toy Bradshaw will be referred to by her first name; Joe Bradshaw will be called by
Bradshaw.
2. In his second and third points of error, Bradshaw argues the unanimity requirement has its
origin in the Texas Constitution and the Due Process Clause of the Fourteenth Amendment. 
Bradshaw cites Molandes v. State, 571 S.W.2d 3, 4 (Tex. Crim. App. 1978), for the proposition that
the Texas Constitution requires the charge on sudden passion to be unanimous. See Tex. Const.
art. V, § 13; see also Sanchez v. State, 23 S.W.3d 30, 41 (Tex. Crim. App. 2000) (Keller, J.,
concurring). Bradshaw argues Texas has guaranteed a "structural protection," i.e., a unanimous
verdict, and there is a violation of the Due Process Clause of the Fourteenth Amendment if the State
fails to meaningfully vindicate that right. Bradshaw cites Evitts v. Lucey, 469 U.S. 387 (1985), as
authority for this proposition. Because the unanimity requirement is well established under the
Texas Code of Criminal Procedure, it is not necessary for us to decide whether the Texas
Constitution or the United States Constitution requires the verdict to be unanimous. 
3. Bradshaw argues that none of the forty-two questions asked of Whitten qualify as hearsay
and claims that Whitten's notes qualify as statements for medical diagnosis or treatment--an
exception to the hearsay rule. See Tex. R. Evid. 803(4). The State argues that everything contained
in the notes constitutes hearsay and that all of the statements are out-of-court statements made for
the truth of the matter asserted. Neither side briefed each question or statement individually. The
statements made by Bradshaw to Whitten would constitute hearsay, but may be admissible under a
hearsay exception. While some of Whitten's testimony and notes may have been hearsay, portions
of Whitten's testimony were clearly not hearsay. Whitten testified about the frequency of the
counseling sessions, the goals of the counseling, and his advice to Bradshaw. Hearsay objections
must be raised in relation to a specific question. The mere fact that a witness could be asked about
hearsay statements does not justify the exclusion of the entirety of the witness' testimony. Because
the trial court excluded Whitten's testimony in its entirety, it is not necessary for us to determine
whether Whitten's testimony concerning statements made by Bradshaw were admissible under a
hearsay exception or whether the notes were admissible under an exception to the hearsay rule. 
4. Although Whitten was called as a witness during the guilt/innocence phase of trial, Whitten's
testimony, if it had been admitted, could have also been considered during the punishment phase. 
On appeal, Bradshaw argues the error in excluding Whitten's testimony resulted in harm during both
phases of trial.
5. Bradshaw's counsel denied Whitten was being called as an expert witness at trial. 
Bradshaw's trial counsel stated, "[u]nder the LPC Act it specifically states that a counselor offering
counseling can be called as a witness for facts or information regarding a therapeutic client. He
cannot testify as an expert."