**Opinion issued February 28, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00687-CR

———————————

**BRANDON CORNETT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1254312**

## O P I N I O N

A jury convicted appellant, Brandon Cornett, of the first-degree felony

offense of murder, and, after it rejected his claim of sudden passion, it assessed

punishment at forty-two years' confinement and a $10,000 fine.[1]  In his sole issue, appellant contends that the punishment-phase jury charge erroneously allowed the jury to return a non-unanimous verdict on the sudden passion special issue.

We affirm.

## Background

On March 6, 2010, appellant and his girlfriend, Tracy Hall, the complainant, lived in the Sterlingshire Apartments in northeast Houston.  Cora Watson lived in the apartment underneath Hall and appellant.  She testified that she was familiar with appellant and was good friends with Hall.  She often saw appellant and Hall together around the apartment complex, and she testified that they acted "like normal people" and that she never saw them fighting or hitting each other.  She also stated that she never heard arguments or yelling coming from their apartment.

Around 9:00 p.m., Watson was visiting with her friend Katrina Ben, who also lived in the complex, when she heard a "thump" and "some rumbling," which sounded like something hitting a wall, coming from appellant and Hall's apartment.  She did not hear any screaming or yelling.  As Ben was about to leave the apartment, Watson heard two gunshots.  Appellant subsequently walked into Watson's apartment and said, "I just killed my wife.  She tried to kill me, but I killed her."  Watson testified that appellant seemed "wild, crazy, [and high] on

---

[1]     *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (Vernon 2011).

2

something" when he entered her apartment. When he was inside, appellant pulled a gun out of his pants pocket, said, "You want to see the gun? You want to see the gun? Here is the gun," and he placed the gun on top of Watson's television. Watson called 9-1-1 when appellant displayed the gun and told the dispatcher that "a man [said] he just killed his wife." Watson then put a towel over the gun so no one else would touch it, and appellant left her apartment. He stayed in front of Watson's apartment, "wallowing around in the grounds," and "rock[ing] and roll[ing]" on the grass. Appellant then took Watson's phone away from her and "told the police that he would be waiting on them."

Watson ran to the apartment of two of appellant's friend—Bobby Hamilton and Teniell Vann—to tell them what had happened and to ask them to help "calm [appellant] down." Watson and several other people, including Ben and appellant's two friends, went to appellant and Hall's apartment, but Watson could not get past the front door because Hall was lying "right behind the door." Watson could see that Hall had a bullet wound, but she did not see any sort of weapon lying near Hall.

Nikesha Williams also lived in the same apartment complex. She testified that she knew both Hall and appellant. She occasionally saw Hall and appellant around the complex together, and she never saw them engaged in "any kind of altercation." On the evening of the shooting, Williams heard a gunshot while she

3

was in her apartment. She looked outside her window but did not see anything. After one of Williams' friends left the apartment to investigate, Williams looked out of her window and saw appellant on the phone. She heard appellant say something like, "She is not breathing" or "She is still breathing," and she then heard him say, "I think she is still alive" and "Just please hurry up." She stated that appellant appeared to be "high on something." Williams then went up to Hall and appellant's apartment and saw Hall lying behind the front door. She did not see a bat or any other kind of weapon lying near Hall.

Katrina Ben testified that she and Watson were talking when she heard a "really loud rumbling and thumping coming from upstairs," and she also heard what sounded like someone running. She could hear some yelling, but she could not distinguish any words, and she could not determine whether a man or a woman was yelling. Ben agreed with Watson that, after the gunshots, appellant arrived at Watson's apartment holding a gun and looking "like he was high on something." Appellant said to them, "Help me. I just shot my wife. She was beating me." Ben testified that when she looked in appellant and Hall's apartment she could see a baseball bat or a stick "laying right next to [Hall]," close enough that "if she would have been able to stick her hand out, she would have been able to grab it." Ben acknowledged that she did not inform police officers that she saw a bat or a weapon located near Hall's body when she gave her written statement.

4

Houston Police Department ("HPD") Officer A. Taravella, with the crime scene unit, processed the scene for physical evidence. Officer Taravella photographed appellant at the scene, and he documented an injury to appellant's right shoulder, which appeared to be scratches or possibly a bite mark. Appellant also had "very minor" scratches on his stomach and his left elbow. He did not have any injuries on his hands or feet. Officer Taravella testified that he found a gun with its safety catch off sitting under a towel on top of the entertainment center in Watson's apartment. He stated that this gun had a custom name-plate with the letters "CB," which corresponded to a nickname of appellant.

Officer Taravella also documented Hall and appellant's apartment. He testified that, generally, it is hard to draw conclusions concerning from where in a room a particular shot was fired based on the location of fired cartridge casings, but, in this case, one casing was located on Hall's sleeve, indicating that that shot was fired when Hall was already lying on the floor. Officer Taravella also testified that drapes were hanging "immediately at [Hall's] head" and that a baseball bat was lying "partly beneath the drapes." He stated that there was "disarray" in the living room where Hall was found, but not in the rest of the apartment.

Dr. Roger Milton, a medical examiner with the Harris County Institute of Forensic Sciences, performed the autopsy on Hall. Dr. Milton testified that Hall had sustained three gunshot wounds, one to her chest that perforated her aorta,

heart, and right lung, and two to her abdomen. He stated that one of the exit wounds was only a partial exit wound, which was "indicative of there being some type of surface between the exiting bullet and the back, meaning that [Hall's] body more than likely was up against a hard surface that prevented the bullet from actually exiting the body." He also testified that he did not observe any other injuries on Hall, which, in his opinion, "would lead [him] to conclude that [Hall] was not in a struggle where [she] actually punched, kicked, or struck another person or an object prior to [her] death."

The trial court admitted two videotaped statements that appellant made to the police. Appellant admitted to shooting Hall in both statements. In his first statement, appellant informed officers that he and Hall had argued the morning of the shooting after Hall accused him of infidelity. He also stated that, after he arrived home that evening, he obtained some PCP and cocaine, which he shared with Hall. He then confessed his infidelity to Hall, and Hall started biting him on his shoulder and arm. He suspected that Hall had wired their apartment with recording devices, and he also believed that Hall was planning to kill him because, according to him, she started looking around for a weapon. Appellant stated that he shot Hall because she was trying to hurt him and "[i]t was either me or her." In his second statement, appellant stated that Hall started choking him and grabbing for the gun that he kept in his pocket. After she bit him on the arm, appellant tried

6

to move the gun away from her and it went off. He stated that Hall then started taunting him about the gun, and he shot her a second time.

April and Raymond Cornett, appellant's older sister and older brother, testified that they often saw appellant and Hall together. Appellant would sometimes have cuts, scratches, or other marks on his body, and, on at least three occasions when appellant was not around, Hall threatened appellant in April's presence while walking around with a baseball bat. The last time this occurred was approximately two months before the shooting. Raymond testified that his family "really didn't too much agree with [appellant and Hall's] relationship because of how abusive she was to him." On one occasion, Raymond also saw Hall with a bat in her hand after he heard her arguing with appellant.

In the guilt-innocence jury charge, the trial court instructed the jury on apparent danger and self-defense. The jury rejected these defenses and found appellant guilty of murder.

At the punishment phase, appellant stipulated to two prior convictions. This was the only evidence offered by either the State or the defense. The punishment-phase jury charge, to which defense counsel did not object, included two general instructions that "[y]our verdict must be by a unanimous vote of all members of the jury" and that "[a]fter you have reached a unanimous verdict, the Foreperson will certify thereto by using the appropriate form attached to this charge and signing the

7

same as Foreperson." This charge included a special issue that required the jury to determine whether appellant caused Hall's death "under the immediate influence of sudden passion arising from an adequate cause." The charge defined both "adequate cause" and "sudden passion," and it instructed the jury that if it believed that appellant caused Hall's death under the immediate influence of sudden passion arising from an adequate cause, it must make an affirmative finding on the special issue and assess punishment within the second-degree felony punishment range of two to twenty years' confinement. The charge instructed the jury that, if it did not believe that appellant caused Hall's death under the immediate influence of sudden passion, it must make a negative finding on the special issue and assess punishment within the first-degree felony range of five to ninety-nine years or confinement for life.

The punishment-phase charge asked the following question concerning the special issue:

> Do you the Jury unanimously find by a preponderance of the evidence that the defendant caused the death of Tracy Hall under the immediate influence of sudden passion arising from an adequate cause?
>
> The jury will answer either, "We do" or "We do not."

The jury answered, "We do not." The jury then, "having made a negative finding to the special issue," assessed punishment at forty-two years' confinement and a

$10,000 fine. Neither the State nor defense counsel desired to have the jury polled after its punishment verdict.

## Standard of Review

We review jury charge error under a two-step process. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we determine whether error exists in the charge. *Id.* If error does exist, we review the record to determine whether the error caused sufficient harm to require reversal of the conviction. *Id.* If the appellant preserved error by timely objecting to the charge, we will reverse if the appellant demonstrates that he suffered "some harm" as a result of the error. *Id.* When the defendant fails to object to the charge, we will not reverse for jury-charge error unless the record shows "egregious harm" to the defendant. *Id.* at 743–44 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)); *see also Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (applying egregious-harm standard to unobjected-to jury charge error); *Starks v. State*, 127 S.W.3d 127, 133 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd, untimely filed) (providing that, to preserve error concerning jury charge, defendant must either object or request specific charge). In determining whether the error caused egregious harm, "[w]e must decide whether the error created such harm that the appellant did not have a fair and impartial trial." *London v. State*, 325 S.W.3d 197, 208 (Tex. App.—Dallas 2008, pet. ref'd).

**Jury Unanimity**

In his sole issue, appellant contends that the punishment-phase jury charge allowed the jury to return a non-unanimous verdict on the sudden-passion special issue, which caused him egregious harm.

### A. Error in the Charge

If the defendant has been convicted of murder, he may argue at the punishment stage of trial that he caused the death of the complainant while under the immediate influence of sudden passion arising from an adequate cause. TEX. PENAL CODE ANN. § 19.02(d) (Vernon 2011); *London*, 325 S.W.3d at 207. If the defendant proves this issue in the affirmative by a preponderance of the evidence, the offense is reduced from a first-degree felony to a second-degree felony. TEX. PENAL CODE ANN. § 19.02(d); *London*, 325 S.W.3d at 207. The Penal Code defines "sudden passion" as "passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). "Adequate cause" is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). To be entitled to an affirmative finding on this issue, the defendant must demonstrate that "the homicide occurred while the passion still existed and

10

before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005).

> Code of Criminal Procedure article 37.07, section 3(c) provides:
>
> If the jury finds the defendant guilty and the matter of punishment is referred to the jury, the verdict shall not be complete until a jury verdict has been rendered on both the guilt or innocence of the defendant and the amount of punishment. *In the event the jury shall fail to agree on the issue of punishment, a mistrial shall be declared only in the punishment phase of the trial*, the jury shall be discharged, and no jeopardy shall attach.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(c) (Vernon Supp. 2012) (emphasis added). The Court of Criminal Appeals interpreted a prior version of this statute as requiring the jury to agree unanimously on the issue of sudden passion. *See Sanchez v. State*, 23 S.W.3d 30, 34 (Tex. Crim. App. 2000). This means that the jurors must be unanimous in determining either that the defendant *did* act under the immediate influence of sudden passion or that the defendant *did not* act under the influence of sudden passion. *See Newton v. State*, 168 S.W.3d 255, 256 (Tex. App.—Austin 2005, pet. ref'd); *see also Swearingen v. State*, 270 S.W.3d 804, 811 (Tex. App.—Austin 2008, pet. ref'd) ("The court of criminal appeals has held that when sudden passion is raised and submitted, the jury must unanimously agree that the defendant either did *or did not* act under the immediate influence of sudden passion . . . .") (emphasis in original).

11

In some cases, our sister courts have held that a general unanimity instruction in the punishment-phase charge—such as, for example, an instruction that "[y]our verdict must be by a unanimous vote of all members of the jury"—has been sufficient to render proper a charge that does not otherwise specifically instruct the jury that it must unanimously agree that the defendant did or did not act under the influence of sudden passion. In *Barfield v. State*, the trial court submitted a punishment charge that had a general unanimity instruction coupled with a special-issue verdict form that asked,

> Do you, the jury, find by a preponderance of the evidence that on the occasion in question, at the time of the commission of [the] offense for which the defendant is on trial, the defendant, Arnold Barfield, III, caused the death of Rickey Burns, while he, Arnold Barfield, III, was under the immediate influence of sudden passion arising from an adequate cause?

202 S.W.3d 912, 917 (Tex. App.—Texarkana 2006, pet. ref'd). The Texarkana Court of Appeals reasoned that the general unanimity instruction and the separate question concerning the special issue of sudden passion "appropriately guaranteed a unanimous finding on the sudden passion issue," and, therefore, the charge contained no error. *See id.* at 918; *see also Cartier v. State*, 58 S.W.3d 756, 760 (Tex. App.—Amarillo 2001, pet. ref'd) ("[T]he term 'verdict' as used in paragraph 16 of the charge [setting out the general unanimity requirement] means the written declaration by the jury of its decision of an 'issue,' and did not allow the jury to

return a non-unanimous decision adverse to appellant on the issue of sudden passion or otherwise.") (internal citations omitted).

In other cases, however, courts have held that a general unanimity instruction is insufficient when the remainder of the charge erroneously allowed the jury to reject a sudden-passion defense with a less-than-unanimous verdict. For example, in *Swearingen*, the trial court included a general unanimity instruction in the punishment-phase charge, but it also contained the following application paragraphs relevant to the sudden passion issue:

> If you find by a preponderance of the evidence that the defendant caused the death under the immediate influence of sudden passion arising from an adequate cause, you will assess the defendant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for any term not more than 20 years or less than 2 years. In addition, a fine not to exceed $10,000 may be imposed.

> However, if you do not find by a preponderance of the evidence that the defendant committed the offense of murder under the immediate influence of sudden passion arising from an adequate cause, you will assess the defendant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for Life or for any term not more than 99 years or less than 5 years. In addition, a fine not to exceed $10,000 may be imposed.

270 S.W.3d at 807–08. The Austin Court of Appeals held that this instruction coupled with the charge's general unanimity instruction "ensured that any *affirmative* finding on sudden passion would be unanimous." *Id.* at 811 (emphasis added). The court then noted that the jury was instructed to assess punishment in

the first-degree felony range "if you *do not find* by a preponderance of the evidence that the defendant committed the offense of murder under the immediate influence of sudden passion . . . ." *Id.* (emphasis in original). Thus, the charge authorized the jury to assess punishment within the first-degree punishment range "as a default if it *failed to find unanimously* that Swearingen *did* act under sudden passion." *Id.* (emphasis in original) The charge did not require that the jury make a unanimous finding that Swearingen did not act under the influence of sudden passion before it assessed punishment within the first-degree felony range. *Id.*

The Austin Court observed that, because the defendant bears the burden of proof on the sudden passion issue, an individual juror's failure to find that the defendant acted under sudden passion is equivalent to a finding that the defendant did not act under the influence of sudden passion. *Id.* It then noted that the jury's collective failure to find unanimously that the defendant did act under sudden passion is not necessarily equivalent to the jury's collective unanimous finding that the defendant did not act under sudden passion. *Id.* For example, the jury collectively fails to find unanimously that the defendant acted under sudden passion if one juror votes that the defendant did not act under sudden passion. *Id.* at 812. The Austin Court concluded that because this charge "conditioned the first-degree felony punishment range on only a failure to find sudden passion

14

unanimously rather than a unanimous negative finding on the issue, the charge was erroneous." *Id.*

The charge flaw in *Swearingen* was also present in *Newton* and *Bradshaw v. State*. *See id.*; *Bradshaw v. State*, 244 S.W.3d 490 (Tex. App.—Texarkana 2007, pet. ref'd); *Newton*, 168 S.W.3d at 256–57. The same flaw also exists in the charge at issue in this case. Here, the punishment-phase charge included two general references to unanimity: (1) the charge instructed the jury that its "verdict must be by a unanimous vote of all members of the jury"; and (2) the charge concluded with the directive that "[a]fter you have reached a unanimous verdict, the Foreperson will certify thereto by using the appropriate form attached to this charge and signing the same as Foreperson." The charge then included a separate special issue on sudden passion. This special issue verdict form provided the statutory definitions of "adequate cause" and "sudden passion," informed the jury that the burden of proof rested on appellant for this issue, and contained the following instructions:

> Now, bearing in mind the foregoing instructions, if you believe the defendant proved by a preponderance of the evidence that the defendant, having committed the offense of murder, caused the death of Tracy Hall under the immediate influence of sudden passion arising from an adequate cause, you must make an affirmative finding as to the special issue, and the punishment you must assess is by confinement in the institutional division of the Texas Department of Criminal Justice for any term of not more than twenty years or less than two years. In addition, a fine not to exceed $10,000.00 may be imposed.

15

But, if you do not believe that the defendant proved by a preponderance of the evidence that the defendant, having committed the offense of murder, caused the death of Tracy Hall under the immediate influence of sudden passion arising from an adequate cause, you must make a negative finding as to the special issue, and the punishment you must assess is by confinement in the institutional division of the Texas Department of Criminal Justice for life or for any term of not more than ninety-nine years or less than five years. In addition, a fine not to exceed $10,000.00 may be imposed.

The special issue verdict form concluded with the following question:

Do you the Jury unanimously find by a preponderance of the evidence that the defendant caused the death of Tracy Hall under the immediate influence of sudden passion arising from an adequate cause? The jury will answer either, "We do" or "We do not."

The jury answered "we do not," and it ultimately assessed punishment at forty-two years' confinement and a $10,000 fine.

We conclude that, like the jury charge at issue in *Swearingen*, this charge, although it ensures that an affirmative finding on the sudden passion issue would be unanimous, does not require unanimity on a negative finding on the sudden passion issue. *See* 270 S.W.3d at 811. This charge instructed the jury to apply the first-degree felony punishment range if it "do[es] not believe the defendant proved" sudden passion by a preponderance of the evidence. This charge also ultimately asked the jury, when making its finding on this special issue, whether it "unanimously [found] by a preponderance of the evidence that [appellant] caused the death of Tracy Hall under the immediate influence of sudden passion." Read

16

as a whole, this charge fails to condition the application of the first-degree punishment range not only on a failure to unanimously find that appellant acted under the influence of sudden passion but also on the unanimous finding that appellant did not act under the influence of sudden passion. We therefore conclude that, as in *Swearingen*, this charge "conditioned the first-degree felony punishment range on only a failure to find sudden passion unanimously rather than a unanimous negative finding on the issue," and, therefore, this charge is erroneous. *See id.* at 812.

### B. Harm Analysis

Having determined that the punishment-phase charge was erroneous, we must now determine whether this error was harmful. Because defense counsel did not object to the charge, we will reverse only if the record demonstrates that the error caused "egregious harm" to appellant. *See Bluitt*, 137 S.W.3d at 53. Charge error is egregiously harmful if it "affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Swearingen*, 270 S.W.3d at 812. If the error caused the jury, in fact, to render a less-than-unanimous verdict on an issue on which unanimity is required, the error is egregiously harmful. *Id.* The defendant must have incurred actual, and not just theoretical harm, to be entitled to reversal. *See id.* at 813; *Curry v. State*, 222 S.W.3d 745, 753 (Tex. App.—Waco 2007, pet. ref'd). "The actual degree of harm

17

must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *London*, 325 S.W.3d at 208 (quoting *Almanza*, 686 S.W.2d at 171). This inquiry is factual in nature and turns on the unique circumstances of the case. *See Swearingen*, 270 S.W.3d at 813.

In *Sanchez*, the charge at issue expressly instructed the jury that it could only find in favor of the defendant on the sudden passion issue if it was unanimous "and that otherwise [it] would have to find against appellant on the issue." 23 S.W.3d at 32. Here, this charge "did not affirmatively direct the jury *not* to be unanimous in failing to find sudden passion, or even emphasize that it could be," and the charge included a general unanimity instruction. *See Swearingen*, 270 S.W.3d at 813; *see also Curry*, 222 S.W.3d at 753 ("[T]he general instruction informed the jury that its verdict must be by a unanimous vote, and nothing else in the charge indicated to the jury that its vote against sudden passion did not have to be unanimous."). Thus, as in *Swearingen*, "we can conclude that the charge did not preclude or affirmatively discourage a unanimous finding" that appellant did not act under the influence of sudden passion. *See* 270 S.W.3d at 813; *see also Bradshaw*, 244 S.W.3d at 498 (noting, in holding that charge error did not result in egregious harm, that "the jury instructions in this case included a general statement that the

18

verdict must be unanimous"); *Curry*, 222 S.W.3d at 753 (considering same in holding charge error not egregiously harmful).

Additionally, unlike in *Sanchez*, in which, upon being polled by the trial court, three jurors indicated that they had wanted to find in favor of the defendant on the sudden passion issue but could not due to the instructions in the charge, there is no evidence here that the jury's verdict was not unanimous. *See Bradshaw*, 244 S.W.3d at 498; *Curry*, 222 S.W.3d at 753. Here, after the trial court read the jury's punishment verdict on the record, the court asked both the State and defense counsel whether they desired to have the jury polled. Both sides declined. As a result, any argument that the jury's verdict was not unanimous is pure speculation. *See Bradshaw*, 244 S.W.3d at 498.

We also consider whether the arguments by counsel emphasized the faulty instructions or encouraged the jury to apply the first-degree punishment range even if it did not unanimously find that appellant did not act under the influence of sudden passion. *See Swearingen*, 270 S.W.3d at 813–14; *see also London*, 325 S.W.3d at 208–09 ("In closing argument, the State drew the jury's attention to the sudden passion issue and the language in the charge . . . ."). Here, although both defense counsel and the prosecutor argued the sudden passion issue in closing arguments, neither of them addressed or even mentioned the unanimity requirement. Thus, this is not a situation in which counsel emphasized the point

19

that was in error, converting the harm from theoretical to actual harm. *See Swearingen*, 270 S.W.3d at 814 (quoting *Hines v. State*, 269 S.W.3d 209, 221 (Tex. App.—Texarkana 2008, pet. ref'd, untimely filed)).

Finally, we consider the evidence presented at trial. *See id.* Appellant did not contest the fact that he shot Hall; instead, his focus at trial was on establishing that he acted in self-defense after Hall physically attacked him and started searching for a weapon. Appellant did not testify at trial, but the trial court admitted appellant's two videotaped statements made to police. In both statements, appellant asserted that Hall bit him on the shoulder and started hitting him. In his first statement, after admitting that he had consumed both PCP and cocaine on the night of the shooting, appellant informed police that he had confessed his infidelity to Hall. He also stated that he believed Hall had wired their apartment with recording equipment, and he believed that, as they argued, she was looking for a weapon, such as a baseball bat. The trial court admitted a photograph of the scene, which depicted Hall lying on her back and, in the vicinity of her head, the end of a baseball bat visible underneath the drapes. Hall does not appear to have been reaching for the bat in this photograph.

No eyewitnesses to the shooting itself testified at trial. Appellant and Hall's neighbors, including Cora Watson, Nikesha Williams, and Katrina Ben, all testified that they could hear some "rumbling and thumping" from the apartment,

20

followed by multiple gunshots, but none of them were eyewitnesses to the shooting. Watson testified that she did not hear any yelling coming from appellant's apartment, and, while Ben testified that she could hear yelling, she could not hear precise words, and she could not determine whether a man—appellant—or a woman—Hall—was the one yelling.

Officer Taravella testified that he found a fired cartridge casing on Hall's sleeve, which indicated to him that Hall was already lying on the floor when that particular shot was fired. He also testified that a baseball bat was lying near her body. Dr. Milton testified that Hall sustained three gunshot wounds, one to the chest and two to the abdomen, and that one of the exit wounds was only a partial exit wound, which indicated that Hall's body was against some type of hard surface which prevented the bullet from completely exiting her body. Aside from the gunshot wounds, Hall had no other injuries, which suggested to Dr. Milton that she was not involved in a physical struggle prior to being shot. The State also presented evidence that Hall, at 4 feet, 11 inches tall and approximately 112 pounds, was smaller than appellant, at 5 feet and seven or eight inches tall and approximately 140 pounds.

The Penal Code defines "sudden passion" as "passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation," and the

21

Code defines "adequate cause" as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1)–(2). The defendant must prove that

> there was an adequate provocation, that a passion or an emotion such as fear, terror, anger, rage, or resentment existed, that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide.

*McKinney*, 179 S.W.3d at 569. The defendant may not rely on a cause of his own making, such as precipitating a confrontation with the complainant. *See Trevino v. State*, 157 S.W.3d 818, 822 (Tex. App.—Fort Worth 2005, no pet.); *Hernandez v. State*, 127 S.W.3d 206, 211 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("Ordinary anger or causes of a defendant's own making are not legally adequate causes.").

The evidence reflected that appellant had consumed PCP and cocaine prior to arguing with Hall, that appellant precipitated the argument by confessing his infidelity to Hall, that Hall had no wounds consistent with being involved in a physical struggle prior to being shot, and that Hall did not have a weapon in her immediate possession. This is not a case in which there is "substantial" evidence of sudden passion. *See Swearingen*, 270 S.W.3d at 820 ("Although there may have been evidence of former provocation, the evidence was, at best, weak in

22

establishing that Swearingen was incapable of rational thought and collected action . . . ."); *Curry*, 222 S.W.3d at 753 ("Self-defense and sudden passion are not mutually exclusive, but to the extent Marvin's sudden passion arose out of his alleged self-defense, the jury unanimously rejected that notion with its guilt finding on murder. . . . The evidence supporting sudden passion is simply too weak to be said to go [to] the 'very basis of the case' or 'vitally affect a defensive theory' and thus constitute egregious harm.").

When we consider the entire record, including the jury charge itself, the arguments of the parties, and the evidence presented at trial, we conclude that the charge error caused nothing more than, at most, "theoretical harm." *See Swearingen*, 270 S.W.3d at 821; *Curry*, 222 S.W.3d at 753; *see also Bradshaw*, 244 S.W.3d at 498 ("Because the charge contained a general unanimity instruction and there is no evidence that the verdict was not actually unanimous, the error was not so egregious as to vitally affect a defensive theory or make the case for conviction or punishment clearly and significantly more persuasive."). We therefore hold that the record does not establish that the charge error caused egregious harm.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

                                          Evelyn V. Keyes
                                          Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Publish.  TEX. R. APP. P. 47.2(b).