

In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00130-CR
_____


BILLY DEE RILEY, JR., Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 09F0483-102


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

The New Year's Eve party at the Expo Hall in Nash, Texas, had been going smoothly. But as the new year of 2009 was just getting started, violence erupted—allegedly gang oriented—resulting in the death of Terry Matthews. Billy Dee Riley, Jr., was charged with, convicted of, and sentenced to fifty years' imprisonment for, Matthews' murder.

On Riley's first appeal to this Court, he argued, and we agreed—Carter, J., dissenting—that his trial counsel had been ineffective by giving him bad advice—erroneously telling Riley that a jury, after finding Riley guilty of murder, would be authorized to assess community supervision for him rather than a prison sentence. Such ruling on that issue, if it had been the final word, would have disposed of the whole case; therefore, we did not address Riley's other appellate complaints.[1] The case, however, was further appealed; our decision was reversed by the Texas Court of Criminal Appeals,[2] based on that court's conclusion that Riley had not demonstrated that the outcome of his trial was affected by the admittedly substandard legal advice. Riley's appeal has been remanded to us to address Riley's remaining issues on appeal.

We affirm the judgment of the trial court because (1) the trial court had no duty to admonish Riley that he was ineligible to get community supervision from the jury, (2) Riley did

---

[1]Riley's grounds on appeal include that: (1) he received ineffective assistance of counsel, who incorrectly advised him that he would be eligible for community supervision by a jury even if convicted of murder; (2) the trial court had a duty to admonish him regarding ineligibility of community supervision from a jury; (3) the trial court erred by excluding "certain photographs and testimony"; (4) the evidence was insufficient to establish the jury's rejection of sudden passion during punishment; (5) the court failed to include language in the punishment charge requiring rejection of the issue of sudden passion to be unanimous; (6) the punishment charge allowed rendition of a nonunanimous verdict; and (7) counsel rendered ineffective assistance in failing to object to the punishment charge.

[2]*See Riley v. State*, No. PD-1531-11, 2012 WL 4092874 (Tex. Crim. App. Sept. 19, 2012). The Texas Court of Criminal Appeals concluded with respect to the first issue that, "while appellant has shown deficient performance by trial counsel, he has failed to prove that, had defense counsel properly informed appellant of his ineligibility for probation, there is a reasonable probability that his trial would have produced a different result." *Id.* at *4.

not preserve any error in the exclusion of evidence, (3) the evidence is legally and factually sufficient to support the jury's rejection of sudden passion, (4) egregious harm has not been shown in the failure to instruct the jury that rejection of sudden passion must be unanimous, and (5) no prejudice has been shown from Riley's counsel's failure to object to the punishment charge.

*(1)* *The Trial Court Had No Duty to Admonish Riley that He Was Ineligible to Get Community Supervision from the Jury*

Not only did Riley claim ineffective assistance of counsel due to the community-supervision mistake, he also claims that the trial court should have admonished him to dissuade him of the misunderstanding. Riley's counsel erroneously believed that Riley could receive community supervision in the event that he was convicted of murder.[3] He filed an "Application for community supervision from the jury." During voir dire, the court informed the jury:

> The offense of murder under the law of the State of Texas is a first degree felony offense. As a first degree felony offense, what that means is it carries a punishment of not less than five years nor more than ninety-nine years or life in prison. Under certain circumstances the law of the State of Texas provides that if a defendant has never before been convicted of a felony offense and that is proven and shown to the jury, then the jury, if they assess a punishment of ten years or less, the jury may recommend by their verdict that probation be granted to a defendant. . . . So at the outset, to be a qualified juror, you must be willing to consider anything from five years probation all the way up to life in prison.

The erroneous belief that Riley could be considered for community supervision as a punishment option was shared by the State and the trial court. In fact, the entire punishment proceeding was focused on community supervision, and the parties did not discover that the jury was unable to consider this punishment option until submission of the punishment charge.

---

[3]Sections 3g and 4(d)(8) of Article 42.12 of the Texas Code of Criminal Procedure prevent a judge or jury from ordering or recommending community supervision following a conviction of murder. TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 3g, 4(d)(8) (West Supp. 2012).

Riley argues that "the trial judge failed to correct the parties' erroneous beliefs concerning . . . eligibility for probation until it was too late." Riley stated that, had the trial court properly admonished him, he "would have withdrawn his jury demand[4] and requested that the trial court withhold a finding of guilt and consider granting deferred adjudication."[5]

The trial court is under no duty to admonish a defendant who pleads not guilty. *Williams v. State*, 477 S.W.2d 607 (Tex. Crim. App. 1972); *see* TEX. CODE CRIM. PROC. ANN. art. 26.12 (West 2009). Moreover, as a general rule, there is no mandatory duty for the trial court to admonish the defendant on his or her eligibility for community supervision. *See Ex parte Williams*, 704 S.W.2d 773, 775 (Tex. Crim. App. 1986); *Gomez v. State*, 681 S.W.2d 814, 816 (Tex. App.—Houston [14th Dist.] 1984, no writ) ("Although we also feel that the better practice is to advise a defendant of his ineligibility for probation as a matter of course when this circumstance arises, there is no indication that the trial judge was obliged to inform appellant of this fact."). There are exceptions, however, when the trial court should admonish the defendant regarding community supervision, but these exceptions are applicable only when the court's duty

---

[4]The record below contains Riley's affidavit stating:

> Other than the underlying felony conviction of murder in the above-entitled and numbered cause, I have never before been convicted of a felony in any federal or state court in this or any other state. . . . Prior to trial, and during the course of the trial, each of my attorneys advised me that I would be eligible for probation in the event I was convicted of murder. . . . Had my trial attorneys not given me erroneous advice concerning my eligibility for probation in the event I was convicted of murder, I would have entered an open plea of nolo contendere to the trial court in hopes that the trial court would grant deferred adjudication probation pursuant to Section 5 of Article 42.12 of the Texas Code of Criminal Procedure.

[5]A "court's failure to properly admonish a defendant cannot be forfeited and may be raised for the first time on appeal unless it is expressly waived." *Bessey v. State*, 239 S.W.3d 809, 812 (Tex. Crim. App. 2007).

to admonish is based on the defendant's plea of guilty or nolo contendere.[6] *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a) (West Supp. 2012); *Williams*, 704 S.W.2d at 776–77; *Downs v. State*, 137 S.W.3d 837, 839–41 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (op. on reh'g) (analyzing exception when defendant pled guilty); *Tabora v. State*, 14 S.W.3d 332, 334–35 (Tex. App.—Houston [14th Dist.] 2000, no pet.).[7] Here, because Riley pled not guilty, the trial court was not required to admonish him with respect to eligibility for community supervision.

*(2)     Riley Did Not Preserve any Error in the Exclusion of Evidence*

Before the jury retired to deliberate, there was some discussion on the record concerning certain photographs that included gang-related tattoos or jewelry.[8] The photographs in question were not offered on the record until after the jury had started its deliberations, at which time Riley made an offer of proof. For an offer of proof to be timely, it must be made "as soon as practicable, but before the court's charge is read to the jury." TEX. R. EVID. 103. Unless the substance of the excluded evidence is apparent from the context of the record, the offering party must present a timely offer of proof. TEX. R. EVID. 103(a)(1); *Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999). Because the record must be developed before the charge is read to the jury, an offer of proof or bill of exception is untimely if not presented before then. *See* TEX.

---

[6]If a court volunteers information about community supervision by its own volition in a case where the defendant has pled guilty or nolo contendre, the information provided must be accurate. *Williams*, 704 S.W.2d at 776; *Richard v. State*, 788 S.W.2d 917, 919 (Tex. App.—Houston [1st Dist.] 1990, no pet.).

[7]Also, before Riley's testimony during guilt/innocence, the trial court asked Riley, "Q. Do you also understand that you are charged with murder and the punishment range is five to ninety-nine or life?" Riley responded, "A. Yes, sir."

[8]The trial court had granted the State's motion in limine with respect to any evidence that might have linked the victim to the "Lil Cuz Boys" gang. The grant or denial of a pretrial motion in limine is a preliminary ruling only and normally preserves nothing for appellate review. *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003).

R. EVID. 103(b); *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). Because the record

contains nothing by way of an offer of the photographs or the offer of proof until after the charge

was read to the jury and it was deliberating, no error was preserved regarding the exclusion of

the four photographs.[9]

---

[9]As to the first photograph, the record of this exchange, which occurred after the jury had retired to deliberate, is
included for clarity:

>        [Riley's counsel]: Judge, when JShaun Riley was testifying, we approached to offer
> testimony of JShaun Riley to the effect that he recognized on the deceased, Terry Matthews, that
> he had a representation of the tattoo, "little cuz boys," across his chest. We attempted and would
> like to offer that.

>        THE COURT: All right, this is just for the purposes of the record, as it was properly
> predicated—and help me, Mr. Davis . . .

>        [Riley's counsel]: Well, JShaun testified that he would have recognized Terry Matthews,
> had he seen a picture of him. But then I approached—and he would have testified that this was
> Terry Matthews, had he been presented this photo. He was not afforded the opportunity to
> identify him by this photo. Therefore, the defense objects and would like to present it now for the
> record.

>        [The State]: And, Judge, for record purposes we objected because "little cuz boys" is
> represented to be a gang, and was represented by the defense to be a gang, and this photograph
> could have been cropped at the neck and the face shown. And what we sought to keep out through
> a motion in limine was the tattoo [sic], little cuz boys, and the idea that there was a gang affiliation
> or a gang.

>        [Riley's counsel]: And, Judge, we were just presenting it to JShaun because JShaun
> Riley had saw Terry, the deceased, on the night in question without his shirt off, and that was how
> he identified him. . . .

>        THE COURT: . . . the Court had sustained the objection of the State. The probative
> value of that photograph does not overcome the prejudicial effect, at least in the opinion of the
> Court.

As to the second photograph, the following exchange occurred after the jury retired to deliberate:

>        [Riley's counsel]: Judge, we would also offer a photograph of Courtney Holt, and if
> Olivia Smith were able to be presented this photo, she would have testified that this was one and
> the same Courtney Holt who she testified initiated the confrontation that night, and this is a true
> and accurate representation of what he was actually wearing that night, and we would offer that
> just so the jury could see and get a visual of Courtney Holt as we started off the case.

>        THE COURT: All right.

6

This point of error is overruled.

*(3)     The Evidence is Legally and Factually Sufficient to Support the Jury's Rejection of Sudden Passion*

Riley argues the evidence was legally and factually insufficient to support a negative finding on the issue of sudden passion. Murder is a first degree felony. TEX. PENAL CODE ANN. § 19.02(c) (West 2011). At the punishment phase of trial, defendant may seek to reduce punishment to that of a second degree felony by proving that he or she caused the death under

---

[The State]: Judge, also that photograph could have been cropped at the neck, and there is being held a chain with jewelry on it that says "LCB," which is obviously association with little cuz boys, and we're getting into the gang aspect.

As to the next photograph, the following transpired after the jury retired to deliberate:

[Riley's counsel]: Also, Your Honor, while the medical examiner was on the stand, I attempted to offer a photo that shows the entire body of Terry D. Matthews to show the jury that complete body, all the wounds, so they could get an adequate picture of all the wounds on his body.

[The State]: And we would object, Judge because the body is fully nude, bearing the tattoo [sic] "little cuz boys," and has an incision that runs below the chest plate almost to the pubic area, and is not probative of any issue in this case as there were autopsy photographs introduced that do indeed show the wounds.

The third photograph was offered for the purpose of demonstrating that Matthews' hands were bagged at the hospital. On appeal, Riley advances the arguments that the photograph "would have demonstrated a strong relationship between Courtney Holt and the decedent."

As to the last photograph, counsel argued:

[Riley's counsel]: And, Your Honor, I as well offer two photographs that I would like to proffer. While Detective Scott Sartor was on the stand, I offered this photograph that he said either Detective Brown took at the hospital, that shows that the gunshot residue evidence was property protected there. I offer this into evidence to show that.

THE COURT: And again, ultimately as the expert testified without objection, the Court is of the opinion in this particular situation that the photograph is of the victim who is in the process of dying, and it is of the opinion that it is not—it's a gruesome photograph that added nothing to the jury.

[The State]: Plus the chest—the photograph shows the little cuz boys tattoo. And in addition, Judge—and Mr. Tyler, correct me if I'm wrong, but I stipulated on the gunshot residue, so this was not necessary to show that the hands were properly bagged and preserved because I stipulated to that.

immediate influence of sudden passion with adequate cause. TEX. PENAL CODE ANN. § 19.02(d) (West 2011). "Sudden passion" is passion directly caused by and from provocation by the individual killed or a third party acting with the person killed which arises at time of offense and is not solely the result of former provocation. TEX. PENAL CODE ANN. § 19.02(a)(2) (West 2011). "Adequate cause" is any cause that would typically lead to anger, rage, resentment, or terror in a person of ordinary temperament, sufficient to render the mind incapable of cool reflection. TEX. PENAL CODE ANN. § 19.02(a)(1) (West 2011). If the defendant affirmatively proves sudden passion by a preponderance of the evidence, the offense is a second degree felony. TEX. PENAL CODE ANN. § 19.02(d).

The Texas Court of Criminal Appeals held that *Jackson v. Virginia*, 443 U.S. 307 (1979), is the only standard a reviewing court should apply to determine the sufficiency of evidence in support of the elements of a criminal offense that the State must prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). However, the *Jackson* standard does not apply to review sufficiency of the evidence supporting the jury's rejection of sudden passion during punishment. *Smith v. State*, 355 S.W.3d 138, 148 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Judge Cochran's concurrence in *Brooks* suggested that the standard in *Meraz* is still the appropriate standard of review where defendant had the burden of proof on an affirmative defense. *See e.g. Lantrip v. State*, 336 S.W.3d 343, 346 n.5 (Tex. App.—Texarkana, 2011, no pet.); *Ervin v. State*, 331 S.W.3d 49, 53 n.2 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).[10] We have previously ruled that we review a challenge to the sufficiency of the

---

[10]*See Johnson v. State*, No. 05-09-00133-CR, 2010 WL 5142392, **6–7 (Tex. App.—Dallas Dec. 20, 2010, pet. ref'd) (not designated for publication). Although the unpublished case has no precedential value, we may take

evidence on sudden passion using the same standard of review as a challenge to the rejection of an affirmative defense. *Bradshaw v. State*, 244 S.W.3d 490, 502 (Tex. App.—Texarkana 2007, no pet.). Therefore, *Brooks* does not alter the standard of review concerning sudden passion, and we will conduct both a legal and factual sufficiency review. *De Leon v. State*, 373 S.W.3d 644, 650 (Tex. App.—San Antonio 2012, pet. ref'd) (citing *Meraz v. State*, 785 S.W.2d 146, 154–55 (Tex. Crim. App. 1990)).

"A legal sufficiency challenge to the evidence supporting a negative finding on sudden passion involves two steps." *Bradshaw*, 244 S.W.3d at 502. First, we examine the record for evidence that supports the fact-finder's negative finding on sudden passion, "while ignoring all evidence to the contrary." *Id.* Second, if no evidence is found to support a rejection of sudden passion, then we examine the entire record to determine if it establishes the contrary proposition of sudden passion as a matter of law. *Id.* (citing *Cleveland v. State*, 177 S.W.3d 374, 387 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd)); *see Perez v. State*, 323 S.W.3d 298, 304 (Tex. App.—Amarillo 2010, pet. ref'd). In reviewing the record, we show deference to the fact-finder's determination of credibility of witnesses and weight they gave to the evidence. *Cleveland v. State*, 177 S.W.3d 374, 388–89 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

In addressing a factual sufficiency challenge to the jury's negative finding of sudden passion, which the defendant has to prove by a preponderance of the evidence, we employ the *Meraz* standard. *Lantrip*, 336 S.W.3d at 346 (citing *Brooks*, 323 S.W.3d at 924 n.67); *Cleveland*, 177 S.W.3d at 390–91. We ask whether, after considering all of the evidence, the judgment is so against the great weight and preponderance of the evidence that it is clearly wrong or manifestly

guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

9

unjust. *Smith*, 355 S.W.3d at 148 (citing *Meraz*, 785 S.W.2d at 154–55); *Bradshaw*, 244 S.W.3d at 502. During this analysis, we review all of the evidence in a neutral light and do not intrude on the fact-finders' roles as the judges of the weight and credibility of the evidence and testimony. *Smith*, S.W.3d at 148 (citing *Cleveland*, 177 S.W.3d at 390–91); *Bradshaw*, 244 S.W.3d at 502.

Because we are called on to assess evidentiary sufficiency, a review of the evidence is necessary.

The Expo Hall in Nash, Texas, played host to this ill-fated New Year's Eve party. Riley attended the party with his cousin, Jeffrey Scales, and JShaun Riley. Also in attendance were members of a local gang called the "Lil Cuz Boys," including Matthews, the victim in this case, and Matthews' friend, Courtney Holt.

The party was in full swing when "the DJ started playing . . . crunk music," in the form of a "fighting song." Female witnesses Olivia Smith and Shambrika Griffin were on the dance floor when the "Lil Cuz Boys" began responding to the music's call for violence. Griffin recalled, "[Holt] and a group of boys was just cutting up and started bouncing around in a circle." She stated the boys were "bouncing around us there, and . . . started pushing" the girls surrounding Griffin. Griffin claimed that "the girl with me, they hit her . . . They all just started fighting." Smith testified that she was pushed by Holt and that she pushed back and told him, "[D]on't push me," at which point Holt "drew up like he was going to hit me, and that's when he . . . started fighting." Riley testified that Matthews and his gang "came over to the place where I was standing, but I was standing off from the people that I was with, and they started pushing on

10

them. . . . At first it was just a little shoving, and then it got more aggressive." Griffin testified Riley attempted to help the girls. The party erupted into a "big fight."

Security guard Lee Roy Mack stated that "a fight broke out in" the building involving approximately eight to ten people. "Pepper spray was induced" to control the fight, but had the opposite effect. Gunfire erupted. Partygoer Gregory Wooten testified, "[T]here was some fighting going on and shooting and security started making the place out so everybody was running . . . . People ended up at the corner, so they started shooting and the window busted out." Wooten said that his friend was shot in the leg and that "[i]t was crazy." Smith said, "Everybody started trying to run outside, and I guess they were shooting outside so everybody came back in." JShaun stated, "[A]fter they maced the place, most people ran outside and that's when all the gunshots started going on, like the first couple of gunshots, and then I saw [Riley] come back."

Scales, who had ridden with Riley to the party, was seated in Riley's car waiting for him to leave. Riley testified that he ran to his car when the security guard used pepper spray. His intent at that point was to leave, but he heard gunshots, remembered JShaun was still in the building, and "didn't want him to get hurt." Riley told the jury that he "reached in my middle console and got my gun and cocked it back and then I put the safety on and I put it in my back pocket." Scales testified he fought with Riley over the gun. He said, "[W]e struggled over it and [Riley was] fighting and I just let it go, and he left again." Riley was on his way back to the Expo Hall when he "got hit with a bottle."

Smith, who was in the Expo Hall, stated, "[Riley] was running like to come back in, and that's when [Holt] was hitting" him. JShaun testified he witnessed Riley getting "hit in the head with a glass bottle," and both JShaun and Smith claimed several others joined Holt in the beating

11

of Riley.  Smith testified Holt was carrying a gun.[11]  As Riley was enduring a beating by Holt and his gang, Smith heard a gun go off.  She did not see the firearm that was discharged, but believed it was Riley's "[b]ecause when it went off, the dudes started running, backing up."  Riley admitted that, because the group was "still attacking me, . . . . I pulled the gun out of my back pocket.  The gun . . . went off two times because the safety got jammed; and when the safety got jammed, I was trying to get it unjammed and the first shot, it scared me and I flinched and it shot again."  Riley said his assailants ran after the first shot was fired.  He then testified, "[W]hen I was hearing shots and the window broke, I turned around and like—trying to make myself big.  I didn't want to throw my whole chest off but I was shooting over my shoulder. And I could see flashes of the guns, and I was shooting and I shot until my gun was clear."

Witness Gabriel Young testified that he saw Riley shoot Matthews and that Matthews did not have a gun.  Crime scene technician Kristy Whisenhunt found a forty-five caliber casing, two forty caliber casings, four nine millimeter Luger casings, eight .380 caliber casings, and two "38 special cartridge casings" at the crime scene.  After receiving a bullet from Matthews' body, Whisenhunt and Officer Wade Thomas both informed the jury that the murder weapon was a .380 caliber firearm.  Sergeant Kevin Schutte testified the murder weapon and .380 caliber bullets were retrieved from Riley's home.  Faced with this evidence, Riley was asked, "[W]e know you killed Terry Matthews, don't we," to which he responded, "That's what the evidence proved. . . . It's science."

---

[11]Griffin testified that she saw "a dude laying down with a gun" shooting and that it was not Riley.

*(a)*     *Legally Sufficient Evidence Supported Rejection of Sudden Passion*

Riley raised the issue of sudden passion by arguing that he was responding to an attack. Smith testified that "[Riley] was running like to come back in, and that's when [Holt] was hitting" him. JShaun stated he witnessed Riley getting "hit in the head with a glass bottle," and both JShaun and Smith claimed several others joined Holt in the beating of Riley. Importantly, while there was testimony that Matthews was friends with Holt, no witness testified that Matthews himself participated in the melee or otherwise provoked Riley. Even if Matthews was a participant in Riley's attack, merely acting in response to the provocation by another is not sufficient to warrant a charge on sudden passion, because there must be some evidence that the appellant was under the immediate influence of sudden passion. *Trevino v. State*, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003). Where testimony demonstrates that a defendant had sufficient time for "cool reflection," the requirement of adequate cause cannot be shown. *See* TEX. PENAL CODE ANN. § 19.02(a)(1).

In this case, Riley's uncontroverted testimony provided sufficient evidence for the jury's rejection of sudden passion. Riley testified that he ran to his car as security guards sprayed pepper spray. His intent at that point was to leave. Even though Riley testified that he returned to the building because "he heard gunshots, remembered JShaun was still in the building, and "didn't want him to get hurt," the fact-finder was in the best position to determine whether a person of ordinary temperament would have left the scene. Mack's testimony that no one was cornering Riley while he was at his vehicle and Scales' testimony that he fought with Riley over the weapon would have provided additional support for the suggestion that Riley had time in

13

which to cool off. Instead, although he had the opportunity to leave the scene of the incident safely, Riley made the conscious decision to return to the Expo Hall with his weapon.

The jury could have decided Riley had a second opportunity for cool reflection. Riley testified that because the group was "still attacking me, . . . . I pulled the gun out of my back pocket. The gun . . . went off two times because the safety got jammed; and when the safety got jammed, I was trying to get it unjammed and the first shot, it scared me and I flinched and it shot again." After the alleged misfire, Riley claimed that his assailants ran away from him. Smith also claimed that Holt's group began evacuating the area after the gunshot. Smith claimed that she did not witness Holt shooting at Riley, and several witnesses testified Matthews was not carrying a weapon. Riley stated that after the misfire, he "stumbled . . . ten feet" and placed his gun in his back pocket. Since Riley's assailants fled after the first shot, a jury could have found he had another opportunity to reflect and leave the scene without further escalation because he was no longer being provoked. Instead, Mack testified, "Mr. Riley was out of his car and just shooting, randomly shooting."

As to the actual shooting of Matthews, witness Young testified Matthews was standing in front of his car without a weapon when Riley shot him from a distance of approximately ten feet. Given that Riley's assailants were fleeing and that Matthews was close to his vehicle, the jury could have developed the idea that Matthews was fleeing the scene and could have reasoned that a person of ordinary temperament would not have chased down Matthews as he was trying to escape, but instead would have safely retreated and avoided danger.

Also, a defendant may not rely on a cause of his own making, precipitating a confrontation, to support his argument that he acted out of sudden passion from adequate cause.

14

*Smith*, 355 S.W.3d at 149 (citing *Naasz v. State*, 974 S.W.2d 418, 420 (Tex. App.—Dallas 1998, pet ref'd)); *Trevino v. State*, 157 S.W.3d 818, 822 n.4 (Tex. App.—Fort Worth 2005, no pet.). The jury could have found that Holt's attack was a response to Riley's return to the Expo Hall with a weapon. Thus, the jury could have decided Riley precipitated the confrontation that resulted in subsequently killing Matthews.

We conclude that this evidentiary record, "while ignoring all evidence to the contrary," supports the fact-finder's negative finding on sudden passion.[12] *Bradshaw*, 244 S.W.3d at 502. Therefore, legally sufficient evidence supported the jury's negative finding on the issue of sudden passion.

*(b)       Factually Sufficient Evidence Supported Rejection of Sudden Passion*

The record also supports the theory that Riley fired several shots in response to the four other weapons that were being shot. Riley testified he was scared. This could have been because his cousin was in the building where gunfire was erupting or because he was being attacked by Holt, who was carrying a weapon. In any event, the jury is the sole judge of the weight and credibility given to any witness' testimony. *See Cleveland*, 177 S.W.3d at 390–91; *see also Trevino*, 157 S.W.3d at 822. As noted above, from Riley's own testimony, the jury was free to conclude that he had sufficient time for cool reflection before shooting Matthews from a range of ten feet. Therefore, after considering all of the relevant evidence, we conclude that the verdict is not so against the great weight and preponderance of the evidence as to be manifestly

---

[12]Since the first prong of the test is satisfied, we need not analyze whether the record establishes sudden passion as a matter of law. *Perez*, 323 S.W.3d at 305 (citing *Howard v. State*, 145 S.W.3d 327, 333–34 (Tex. App.—Fort Worth 2004, no pet.)).

15

unjust, but rather reflected an appropriate exercise of the jury's fact-finding role. *See Meraz*, 785 S.W.2d at 154–55.

The evidence is legally and factually sufficient.

*(4)*     *Egregious Harm Has Not Been Shown in the Failure to Instruct the Jury that Rejection of Sudden Passion Must be Unanimous*

Riley claims the trial court "committed fundamental error in failing to include language within the punishment charge requiring that the jury's decision on the issue of sudden passion had to be unanimous before it could then proceed to assessment of a term of imprisonment." Our review of jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see also Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S. W.2d at 731–32.

At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. §19.02(a)(1). If a defendant establishes by a preponderance of the evidence that he or she acted

16

out of sudden passion, the offense level is reduced from a first degree to a second degree felony.

TEX. PENAL CODE ANN. § 19.02(d); *Trevino*, 100 S.W.3d at 237.

> Article 37.07, Section 3(c) of the Texas Code of Criminal Procedure provides:
>
> If the jury finds the defendant guilty and the matter of punishment is referred to the jury, the verdict shall not be complete until a jury verdict has been rendered on both the guilt or innocence of the defendant and the amount of punishment. In the event the jury shall fail to agree on the issue of punishment, a mistrial shall be declared only in the punishment phase of the trial, the jury shall be discharged, and no jeopardy shall attach. The court shall impanel another jury as soon as practicable to determine the issue of punishment.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(c) (West Supp. 2012). Therefore, a jury finding for

or against sudden passion is required to be unanimous. *Bradshaw*, 244 S.W.3d at 494 (citing

TEX. CODE CRIM. PROC. ANN. art. 37.07 (West Supp. 2012)); *Sanchez v. State*, 23 S.W.3d 30, 34

(Tex. Crim. App. 2000).[13]

> In this case, the jury charge provided:
>
> The punishment which you may assess is confinement in the Institutional Division of the Texas Department of Criminal Justice for life, or for any term of not more than ninety-nine (99) years or less than five (5) years; unless you believe that the defendant caused the death under the immediate influence of a sudden passion arising from an adequate cause in which event you may assess confinement for not more than twenty (20) years or less than two (2) years . . . .
>
> Now if you believe by a preponderance of the evidence that the defendant caused the death of the deceased while under the immediate influence of sudden passion arising from an adequate cause, you will assess punishment at confinement for not more than twenty (20) years nor less than two (2) years and you may impose a fine not to exceed ten thousand dollars ($10,000).

---

[13]*See Johnson v. State*, No. 06-10-00089-CR, 2011 WL 240875, at *4 (Tex. App.—Texarkana Jan. 26, 2011, no pet.) (mem. op.) (not designated for publication). Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

17

In the final paragraph, the jury charge instructed the jurors that the "verdict must be by a unanimous vote of all members of the jury." In *Bradshaw*, we noted that our sister court in *Newton v. State*, 168 S.W.3d 255, 258 (Tex. App.—Austin 2005, pet. ref'd),[14] found an essentially equivalent charge to be erroneous because, while it requires a unanimous affirmative finding on sudden passion, it does not require a unanimous finding against sudden passion. *Bradshaw*, 244 S.W.3d at 495.

Just as in *Bradshaw* and *Newton*, the charge in this case does not "condition the use of the five-to-life punishment range on a unanimous finding that the appellant did *not* act under the influence of sudden passion." *Id.* at 496; *Newton*, 168 S.W.3d at 257. In other words, the five-to-life punishment range was offered as the default punishment range "unless" the jury unanimously agreed that Riley acted with sudden passion. Yet, "a mistrial must be declared if the jurors failed to agree on sudden passion." *Bradshaw*, 244 S.W.3d at 496 (citing *Newton*, 168 S.W.3d at 257); *Sanchez*, 23 S.W.3d at 33 (interpreting Article 30.07, § 3(c) to require mistrial if jury does not unanimously agree to sudden passion issue). Just as in *Bradshaw* and *Newton*, the

---

[14]The charge in *Newton* provided:

> The punishment which you may assess is confinement in the Institutional Division of the Texas Dept. of Criminal Justice for life, or for any term of not more than 99 years or less than 5 years; unless you believe that the defendant caused the death under the immediate influence of a sudden passion arising from an adequate cause in which event you may assess confinement for not more than 20 years or less than 2 years. . . . Now if you believe by a preponderance of the evidence that the defendant caused the death of the deceased while under the immediate influence of sudden passion arising from an adequate cause, you will assess punishment at confinement for not more than 20 years nor less than 2 years and you may impose a fine not to exceed $10,000.

*Newton*, 168 S.W.3d at 256–57.

court's charge in this case failed to ensure a unanimous verdict on rejection of sudden passion.[15] Therefore, it was erroneous. The State concedes this point.

An erroneous or incomplete jury charge does not, however, result in automatic reversal of the conviction or punishment. *Bradshaw*, 244 S.W.3d at 497; *Abdnor*, 871 S.W.2d at 731. We now decide whether the error was harmful. Riley admits in his brief that he failed to object to the jury charge. Because Riley did not preserve his complaint at trial, we must decide whether the error was so egregious and created such harm that the appellant did not have a fair and impartial trial. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *superseded on other grounds by rule as stated in Rodriguez v. State*, 758 S.W.2d 787 (Tex. Crim. App. 1988); *Boones v. State*, 170 S.W.3d 653, 660 (Tex. App.—Texarkana 2005, no pet.).

Egregious harm occurs where an error affects the very basis of a case, deprives the defendant of a valuable right, vitally affects a defensive theory, or makes the case for conviction or punishment clearly and significantly more persuasive. *Boones*, 170 S.W.3d at 660 (citing *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991)). This is a difficult standard to prove, and it must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The "actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171.

---

[15]A general instruction in combination with a special issue on sudden passion assures a unanimous verdict. *See Cartier v. State*, 58 S.W.3d 756, 759–60 (Tex. App.—Amarillo 2001, pet. ref'd). Here, as in *Bradshaw*, the general instruction requiring a unanimous verdict did not cure the error where no special issue on sudden passion was submitted to the jury. *Bradshaw*, 244 S.W.3d at 496.

In *Bradshaw*, we stated that, where there is no evidence that the jury's verdict is not unanimous, the egregious-harm standard cannot be met because "the degree of harm demonstrated by an appellant must be actual, not merely theoretical." *Bradshaw*, 244 S.W.3d at 497–98. In doing so, we cited to *Curry v. State*, 222 S.W.3d 745, 753 (Tex. App.—Waco 2007, pet. ref'd), which found no error where: "(1) nothing in the record indicated the verdict was not unanimous, (2) the instructions included a general statement that the verdict must be unanimous, and (3) Curry's main defensive theory at trial was self-defense." *Bradshaw*, 244 S.W.3d at 498. *Curry* reasoned: "Self-defense and sudden passion are not mutually exclusive, but to the extent [the defendant]'s sudden passion arose out of his alleged self-defense, the jury unanimously rejected that notion with its guilt finding on murder." *Curry*, 222 S.W.3d at 753.

Here, there is no evidence from the record suggesting that the harm to Riley due to the erroneous submission was anything other than theoretical.[16] The defensive strategy at trial was that of self-defense—that Riley's gun was fired as he was being beaten by Holt and his gang. At punishment, Riley's counsel argued:

> First, you're going to have to decide if Billy knowingly, intentionally and with malice killed Terry Matthews. I don't see it. I mean the other option is what Billy did, was it under such circumstances that rendered him incapable of cool reflection. I mean y'all heard that. There was guns fired, people fighting, bullets going everywhere, people yelling, screaming. Could anybody reflect and have cool reflection at that time? I don't think so.

As in *Curry*, to the extent Riley's sudden passion arose from his alleged self-defense, this theory was previously rejected by the jury. Further, the jury was instructed that it would not be proper to assess punishment "by lot, chance, any system of averages, or any method other than a full,

---

[16]Here, the trial court asked and received assurance that the verdict on punishment was the unanimous verdict of each juror. However, as in *Newton*, this did not cure the error. *Newton*, 168 S.W.3d at 259.

fair, and free exercise of the opinions of the individual jurors." Yet, they unanimously sentenced Riley to fifty years' imprisonment, outside of the range that would have been assessed had sudden passion been found.

Therefore, under our precedent, Riley cannot show egregious harm. *Bradshaw*, 244 S.W.3d at 498; *see Curry*, 222 S.W.3d at 753 (finding no egregious harm where "nothing in the record indicates that the jury did not unanimously find against Marvin on sudden passion," and where main defensive strategy at trial was self-defense).

*(5)    No Prejudice Has Been Shown from Riley's Counsel's Failure to Object to the Punishment Charge*

Riley argues that his counsel rendered ineffective assistance in failing to object to the jury charge. We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine Riley's issue of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

First, Riley must show that counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms. *Id.* at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Id.* at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not second-guess the strategy of Riley's counsel

21

at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd).

The second *Strickland* prejudice prong requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–88.

Any allegation of ineffectiveness of counsel must be firmly founded in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003). From the record received by this Court, Riley must show by a preponderance of the evidence that counsel was ineffective. *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). Although Riley filed a motion for new trial in this case and a hearing was held on the motion, the motion did not reference this point of error. At the hearing, counsel was not asked about this issue. No reasons were given for failing to object. However, we cannot see how failing to object to a jury charge that does not require unanimity on the issue of sudden passion can be considered a valid trial strategy.

In any event, because the polled jury members averred that their decision with respect to rejecting sudden passion was unanimous, Riley cannot show that any deficient performance damaged his defense to such a degree that there was a reasonable probability the result of the trial would have been different. *See Strickland*, 466 U.S. at 693.

Riley argues, however, that the harm stems from the standard used to evaluate harm in the court's failure to submit the proper charge. In other words, Riley complains that had counsel

22

objected, he would not be required to show egregious harm to obtain reversal on the jury charge error. While true, even the some-harm standard requires Riley to prove actual, as opposed to theoretical, harm. *Arline v. State*, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). The problem is, he cannot prove actual harm.[17]

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:     November 8, 2012
Date Decided:       November 20, 2012

Do Not Publish

---

[17]In support, Riley cites to *Newton*, 168 S.W.3d 225. In *Newton*, the defendant pled guilty to the murder and the only fact question was the issue of sudden passion. *Id.* at 258. *Newton* stated that "we assume in the absence of evidence to the contrary that the jurors followed the charge," which "unambiguously told the jurors to assess a prison term of five years to life unless they agreed that appellant acted under the immediate influence of sudden passion arising from adequate cause." *Id.* *Newton* reasoned, "If the jurors read the charge and followed it, it is reasonably possible that one or more of them may have believed that appellant acted under the influence of sudden passion, but because the other jurors did not agree, applied the first degree felony punishment range . . . . We cannot dismiss the error as harmless by supposing that the jury ignored the charge." *Id.* The court concluded that "[b]y failing to require the jurors to agree that appellant did not act under the immediate influence of sudden passion, the court's charge was calculated to injure appellant's rights by denying him his statutory right to a unanimous verdict." *Id.* at 260. We distinguish *Newton* from this case because, as in *Curry*, Riley's guilt was tried, a jury rejected his theory of self-defense, and the facts as viewed from a defensive standpoint indicate that Riley's sudden passion arose as a result of the assault by Holt and his gang.