**AFFIRMED as MODIFIED and Opinion Filed October 30, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-22-00491-CR

_____

### KENVAIRIAY JEVERA SMITH, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F-2076131-J**

## MEMORANDUM OPINION

Before Justices Goldstein, Garcia, and Miskel
Opinion by Justice Garcia

A jury convicted appellant of murder and assessed punishment at sixty-five years in prison. In four issues, he argues his conviction should be reversed because (i) the evidence is insufficient to support the jury's rejection of his self-defense claim, (ii) the trial court erred by failing to instruct the jury on the presumption of reasonableness, (iii) the jury charge failed to limit definitions of the culpable mental states to the appropriate result of conduct elements, and (iv) the punishment phase jury instruction on sudden passion allowed a non-unanimous verdict on the special issue. In a cross-point, the State requests that we modify the judgment to show an

affirmative deadly weapon finding. We modify the judgment and as modified, affirm.

## I. BACKGROUND

At 4:00 a.m. on the morning in question, Michael Johnson saw Theron Crawford, Michelle Nwachi ("Shay"), and appellant standing in front of his house.[1] Crawford owed Shay $50 for drugs, and she was trying to collect. Johnson walked out to the group, but subsequently returned to his porch.

Initially, appellant was standing with Shay, but then went to his car while Shay was yelling at Crawford. Johnson went inside for about a minute and returned to the porch. Johnson then saw appellant standing in the street yelling at Crawford about the money. He heard four shots and dropped to the ground on his porch. Crawford fell in the yard bleeding and the others ran away. The medical examiner subsequently determined that Crawford died as a result of three gunshot wounds.

Appellant was charged with murder and arrested. His phone was seized incident to arrest and searched pursuant to a warrant.

The case was tried to a jury. Text messages sent from appellant's phone on the day of the shooting were admitted into evidence, including a message he sent to

---

[1] Other individuals, including a friend of Johnson's who slept on his porch and associates of Shay may also have been present or in the vicinity, but the record is not entirely clear. None of these individuals testified, and the record does not indicate whether they were interviewed, or gave statements.

his girlfriend saying, "u need to call me asap I just f-d call me asap" and messages to "Big Bro Ee" at 5:10 a.m. saying "call me asap," and "I just shot a n- four times."

Detective Ronald Kramer, the lead homicide detective who interviewed appellant, testified about his investigation and interview of appellant. The videotape of that interview was admitted into evidence without objection.

Johnson, two responding officers, a forensic pathologist, and Crawford's mother also testified at trial. Both the guilt/innocence charge and the punishment charge were submitted to the jury without objection.

The jury found appellant guilty and assessed punishment at sixty-five years in prison. This timely appeal followed.

## II. ANALYSIS

### A. Self-Defense

The jury was charged on the law of murder and on self-defense. Appellant's first issue argues the evidence is insufficient to support the jury's rejection of his self-defense claim. We disagree.

A person commits the offense of murder if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1)–(2). The State must prove these elements beyond a reasonable doubt. *See Scott v. State*, No. 06-21-00141-CR, 2022 WL

–3–

13643270, at *7 (Tex. App.—Texarkana Oct. 24, 2022, no pet.) (mem. op., not designated for publication).

The use of deadly force, when justified, is a defense to murder. *Gilbert v. State*, 575 S.W.3d 848, 863 (Tex. App.—Texarkana 2019, pet. ref'd); *see also* TEX. PENAL CODE ANN § 9.02 ("It is a defense to prosecution that the conduct in question is justified under this chapter."); *id*. at §§ 9.31–9.32 (enumerating requirements for establishing claim of self-defense). Subject to certain exceptions, Section 9.31(a) of the Texas Penal Code, entitled "Self-Defense," provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id*. § 9.31(a). Section 9.32(a), entitled "Deadly Force in Defense of Person," further provides that "a person is justified in using deadly force against another":

> (1) if the actor would be justified in using force against the other under Section 9.31; and
>
> (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary:
>
> (A) to protect the actor against the other's use or attempted use of unlawful deadly force; or
>
> (B) to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.

*Id*. § 9.32(a) (1)-(2).

A defendant has the burden of producing some evidence to support a claim of self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *see also London v. State*, 325 S.W.3d 197, 202 (Tex. App.—Dallas 2008, pet. ref'd). The State has the burden of persuasion in disproving self-defense. *See Zuliani*, 97 S.W.3d at 594; *London*, 325 S.W.3d at 202. A jury's guilty verdict is an implicit finding rejecting the defendant's self-defense theory. *London*, 325 S.W.3d at 202.

Because the State bears the burden of persuasion to disprove self-defense by establishing its case beyond a reasonable doubt, we review sufficiency challenges to the jury's rejection of self-defense under the *Jackson* standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense evidence, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018).

We must defer to the jury's determinations of the witnesses' credibility and the weight to be given to their testimony, as the jury is the sole judge of such matters. *Mitchell v. State*, 590 S.W.3d 597, 604 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (internal citations omitted). Because self-defense is a fact issue to be

–5–

determined by the jury, the jury is free to accept or reject any defensive evidence on the issue. *Id.* (citing *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991)).

Appellant's self-defense claim is based on his statement to Kramer. Specifically, appellant argues that his statement shows he feared for his life when Crawford pushed him and "threw a jab." The statements of a defendant and his witnesses, however, do not conclusively prove a self-defense claim. *Smith v. State*, 355 S.W.3d 138, 146 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

In his statement to Kramer, appellant said that he arrived at the scene when Shay and Crawford were arguing, and he urged Shay and her associates to leave. When Crawford grabbed Shay, appellant tried to step in and break it up. Crawford pushed and hit him, so he grabbed a gun that Shay held in her right hand and shot Crawford once, either in the shoulder or on the side. According to appellant, he then "snapped back" and realized he had "messed up," and handed the gun back to Shay.

Appellant claimed he heard more shots on his way back to the car, and Shay had the gun at that time. When Kramer confronted appellant about an earlier statement in which he said he had a gun in his pocket, appellant said that wasn't true.

But the evidence also established other circumstances the jury could reasonably consider as appellant's consciousness of guilt. Appellant ran away after he shot Crawford. *See Figueroa v. State*, 250 S.W.3d 490, 503 (Tex. App.—Austin 2008, pet. ref'd) (evidence of attempting to flee may indicate consciousness of guilt).

Appellant also sent text messages saying he "f-d up," and "shot [someone] four times." The jury could also assess appellant's credibility by comparing his statement to Kramer that he shot Crawford one time to his text message saying he shot someone four times.

In addition, Johnson's testimony contradicts appellant's version of events. Johnson testified that he did not see Shay with a gun, and she was not known to carry one. Johnson never saw Crawford make any aggressive moves and Crawford appeared panicked and was walking around while on the phone. Johnson went inside his house for a minute because he knew something bad was going to happen when appellant went to his car. After returning to his porch, he saw appellant standing in the street and heard shots.

The jury was free to credit Johnson's testimony and reject appellant's version of events. *See Saxon*, 804 S.W.2d at 912 n.5. On the record before us, we conclude the jury could rationally have found beyond a reasonable doubt that appellant committed murder and rationally could have rejected his self-defense claim. Accordingly, we find the evidence legally sufficient to support appellant's conviction. Appellant's first issue is resolved against him.

## B.    Charge Error

In appellant's remaining three issues, he argues the trial court's jury charges contained three errors, two in the guilt/innocence charge and one in the punishment charge. Under Article 36.14, the trial court is required to give the jury a written

charge "setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14; *Vega v. State*, 394 S.W.3d 514, 518 (Tex. Crim. App. 2013). A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). We must first determine whether the charge contained any actual error. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If there was actual error, we must next determine whether the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If an appellant fails to object to or present a properly requested jury charge, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*." *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

**Presumption of Reasonableness**

Appellant first complains that the guilt/innocence charge is erroneous because the trial court failed to instruct the jury on the presumption of reasonableness. The instruction was not requested at trial, nor was there an objection to its omission.

A presumption of reasonableness instruction, derived from the second clause of § 9.31 or § 9.32(b), describes the conditions under which the jury must presume that the defendant's belief that use of force or deadly force was immediately necessary was reasonable. TEX. PENAL CODE ANN. §§ 9.31, 9.32(b); *see also Finch v. State*, No., 05–15–00793–CR, 2016 WL 2586142, at *6 (Tex. App.—Dallas May

–8–

4, 2016, pet. ref'd) (mem. op., not designated for publication). A statutory presumption favoring a defendant must be submitted to the jury "if there is sufficient evidence of the facts that give rise to the presumption . . . unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." TEX. PENAL CODE ANN. § 2.05(b)(1); *Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011).

Here, appellant claims he was entitled to a presumption of reasonableness instruction under § 9.32(b). That section provides:

> An actor's belief that deadly force was immediately necessary is presumed to be reasonable if:
>
> 1. the actor knew or had reason to believe that the person against whom the deadly force was used:
>
> a. unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
>
> b. unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or
>
> c. was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery; and
>
> 2. the actor did not provoke the person against whom the force was used; and
>
> 3. the actor was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

TEX. PENAL CODE ANN. § 9.32(b).

–9–

We note at the outset that "a court is not required to instruct the jury on every conceivable statement or nuance of law potentially applicable to the case." *Magee v. State*, No. 14-16-00408-CR, 2017 WL 2818229, at *6 (Tex. App.—Houston [14th Dist.] June 29, 2017, pet. ref'd) (mem. op., not designated for publication); *see also Allen v. State*, No. 03-15-00420-CR, 2017 WL 1832456, at *2 (Tex. App.—Austin May 2, 2017, pet. ref'd) (mem. op., not designated for publication) (self-defense is a constellation of issues dealing with justified force and court not obligated to include every possible self-defense instruction in the charge).

Here, although the trial court instructed the jury on self-defense, appellant did not request an additional §9.32(b) instruction or object to its omission. Defensive issues must be requested to be considered the law of the case requiring submission to the jury. *Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007). Even when it is raised by the evidence, a trial court has no duty to instruct the jury on an unrequested defensive issue. *Jackson v. State*, 288 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). Therefore, the trial court did not err in failing to submit the instruction sua sponte. *See Bennett*, 235 S.W.3d at 243.

Moreover, even if the instruction had been requested, there was no evidence to support its inclusion in the charge. Although appellant generally asserts there is evidence to support "each of the three prongs under 9.32(b)," the record reflects otherwise.

Indeed, there is no evidence to support even the first prong of §9.32(b). No evidence demonstrates or even suggests that appellant knew or had reason to believe that Crawford was (1) entering or attempting to enter appellant's habitation, vehicle, or place of employment, (2) removing or attempting to remove appellant from his habitation, vehicle, or place of employment, or (3) committing or about to commit aggravated kidnaping, sexual assault, aggravated sexual assault, or robbery. When the presumption of reasonableness is not raised by the evidence, the trial court does not err by omitting an instruction on the issue. *See Hargrove v. State*, No. 05-11-00307-CR, 2012 WL 3553501, at *8 (Tex. App.—Dallas Aug. 20, 2012, pet ref'd) (mem. op., not designated for publication); *Baez v. State*, No. 03-22-00506-CR, 2023 WL 5488790, at *5 (Tex. App.—Austin Aug. 25, 2023, no pet.) (mem. op., not designated for publication). Because we conclude the trial court did not err, we need not consider harm. *See* TEX. R. APP. P. 47.1. We resolve appellant's second issue against him.

## Limiting Definitions of the Culpable Mental States

Appellant's third issue argues the guilt/innocence charge was erroneous because it failed to limit the definitions of knowingly and intentionally to the applicable result of conduct elements. There was no trial objection to the charge.

There are three conduct elements that may be involved in an offense: the nature of the conduct, the result of the conduct, and the circumstances surrounding the conduct. *Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). An

offense may contain any one of these conduct elements that alone or in combination form the overall behavior that the Legislature intended to criminalize, and it is these essential conduct elements to which a culpable mental state must apply. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). A trial court errs when it fails to tailor the definitions of the culpable mental states to the conduct elements(s) of the offense to which they apply. *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995).

Murder is a result of conduct offense, which means that the culpable mental state relates to the result of the conduct, i.e., causing the death. *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex. Crim. App. 2003). In other words, the focus is on the result of the act. *See McQueen*, 781 S.W.3d at 603.

We agree with the parties that the failure to limit the definitions of intentionally and knowingly to the applicable conduct elements was erroneous. *See Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994). Because there was no objection to the charge, we review for egregious harm. *Madden*, 242 S.W.3d 504.

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see also Gelinas v. State*, 398 S.W.3d 703, 708–10 (Tex. Crim. App. 2013) (applying *Almanza*). Errors that result in egregious

harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174. Egregious harm is a "high and difficult standard" to meet. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). We consider these factors in turn.

First, it is significant that the application paragraphs of the charge properly tracked the language for murder. The application paragraph is the charges "heart and soul" because it specifies the factual circumstances under which the jury should convict or acquit. *Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012).

The Court of Criminal Appeals has held that where the abstract portion of a charge indiscriminately sets forth incorrect conduct elements, but the application paragraph correctly states the offense and points the jury to the appropriate definitions, no harm results. *See Hughes*, 897 S.W.2d at 296–97; *see also Patrick*, 906 S.W.2d at 493 ("We conclude that because the facts, as applied to the law in the application paragraph, pointed the jury to the appropriate portion of the definitions, no harm resulted from the court's failure to limit the definitions of culpable mental states").

The application portion of the charge stated:

Now, if you find and believe from the evidence beyond a reasonable doubt that, on or about June 1, 2020, in Dallas County, Texas, the defendant, KENVAIRIAY SMITH, either acting alone or as a party, as that term has been defined, did unlawfully then and there intentionally or knowingly, cause the death of THERON CRAWFORD, an individual, hereinafter called deceased, by shooting the deceased with a firearm, a deadly weapon or did unlawfully then and there intend to cause serious bodily injury to THERON CRAWFORD, hereinafter called deceased, and did then and there commit an act clearly dangerous to human life, to-wit: by shooting the deceased with a firearm, a deadly weapon, and did thereby cause the death of THERON CRAWFORD, an individual, then you will find the defendant guilty of the offense of murder, as charged in the indictment.

Appellant was charged with two theories of murder under TEX. PENAL CODE ANN. § 19.02(b) (1) and (2). These sections provide that a person commits the offense of murder if he (1) intentionally or knowingly causes the death of an individual, or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1)–(2).

The application paragraph correctly applies this law. The intentional and knowing mental states modify the phrase "cause the death of" for the §19.02(b)(1) theory of murder, and "intend" modifies "serious bodily injury" for the §19.02(b)(2) theory of murder. Therefore, the entirety of the charge weighs against egregious harm. *See Patrick*, 906 S.W.2d at 493; *see also Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) (when application paragraph correctly instructs the jury this mitigates against a finding that error in the abstract portion of the charge was egregious).

–14–

The content and probative value of the evidence and counsel's arguments also weigh against a finding of harm. *See Gelinas*, 398 S.W.3d at 709. The focus of the evidence at trial was not on appellant's mental state, but rather on whether he acted in self-defense. Appellant's defensive theory did not hinge on distinctions within the conduct elements or that he did not act knowingly or intentionally with regard to those elements. Instead, the defensive theory was that appellant's use of deadly force was justified. The State did not argue anything that might have confused the jury about application of the requisite mental state to the conduct charged in the case.

*Almanza* also instructs that we should consider any other relevant information in the record. *Almanza*, 686 S.W.2d at 171. Having reviewed the record, we find no additional information relevant to harm.

The record reflects that the erroneous mental state instructions did not vitally affect appellant's defense or deprive him of a fair and impartial trial. *See Wright v. State*, No. 02-15-00399-CR, 2016 WL 6520189 at *4 (Tex. App.—Fort Worth Nov. 3, 2016, no pet.) (mem. op., not designated for publication). Therefore, applying the proper standard, we cannot conclude that appellant suffered egregious harm. Appellant's third issue is overruled.

**Sudden Passion**

Appellant's fourth issue argues the punishment charge was erroneous because the sudden passion special issue did not inform the jury that a unanimous finding

was required. The State agrees the instruction was incorrect but argues appellant was not harmed.

At the punishment stage of a murder trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d). "Sudden passion" means "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN § 19.02(a)(2). "Adequate cause" means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN § 19.02(a)(1). The core concept is that a person's mental state has rendered him incapable of rational thought and collected action. *Kennedy v. State*, 193 S.W.3d 645, 653–54 (Tex. App.—Fort Worth 2016, pet. ref'd). The mere fact that someone acts in response to provocation of another is not enough. *Trevino v. State*, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003).

If a defendant establishes by a preponderance of the evidence that he or she acted out of sudden passion, the offense level is reduced from a first degree to a second-degree felony. TEX. PENAL CODE ANN. § 19.02(d); *Trevino*, 100 S.W.3d at 237.

Code of Criminal Procedure article 37.07, section 3(c) provides:

> If the jury finds the defendant guilty and the matter of punishment is referred to the jury, the verdict shall not be complete until a jury verdict has been rendered on both the guilt or innocence of the defendant and the amount of punishment. In the event the jury shall fail to agree on the issue of punishment, a mistrial shall be declared only in the punishment phase of the trial, the jury shall be discharged, and no jeopardy shall attach.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(c). The Court of Criminal Appeals interpreted a prior version of this statute as requiring the jury to agree unanimously on the issue of sudden passion. *See Sanchez v. State*, 23 S.W.3d 30, 34 (Tex. Crim. App. 2000). This means that the jurors must be unanimous in determining either that the defendant acted under the immediate influence of sudden passion or that the defendant did not act under the immediate influence of sudden passion. *See Newton v. State,* 168 S.W.3d 255, 256 (Tex. App.—Austin 2005, pet. ref'd); *see also Swearingen v. State*, 270 S.W.3d 804, 811 (Tex. App.—Austin 2008, pet. ref'd) ("The court of criminal appeals has held that when sudden passion is raised and submitted, the jury must unanimously agree that the defendant either did or did not act under the immediate influence of sudden passion . . . .").

In the present case, the jury was instructed:

> An affirmative "yes" answer on the issue submitted must be unanimous, but if the jury is not unanimous in reaching an affirmative answer, then the issue must be answered "no."

As the foregoing demonstrates and the parties agree, the instruction was erroneous. *See Sanchez*, 23 S.W.3d at 32. An erroneous or incomplete charge, however, does not result in automatic reversal of the conviction or punishment.

*Abdnor*, 871 S.W.2d at 731. We now consider whether the error was harmful. Because there was no objection, we consider whether appellant was egregiously harmed. *See Swearingen*, 270 S.W.3d at 812.

In evaluating the harm factors, we conclude the erroneous instruction did not cause appellant egregious harm. *See Almanza*, 686 S.W.2d at 171. To begin, the record shows that there were two competing theories at trial—the State's assertion that appellant knowingly and intentionally shot Crawford, and the defense's assertion that appellant shot Crawford in self-defense. The jury heard the evidence in support of self-defense and implicitly rejected it by finding appellant guilty of murder.

We acknowledge that a jury rejecting a self-defense theory at guilt/innocence does not necessarily mean the jury would reject sudden passion as mitigation of punishment. *See Trevino*, 100 S.W.3d at 242 (recognizing that, depending on the facts, there could be evidence that was not discredited by the rejection of self-defense which supports a claim of sudden passion). But those instances are rare. Generally, when the State's evidence is sufficient to overcome a self-defense claim, it will also be sufficient to show the absence of sudden passion. *See Rivas v. State*, 473 S.W.3d 877, 885 (Tex. App.—San Antonio 2015, pet. ref'd); *Curry v. State*, 222 S.W.3d 745, 753 (Tex. App.—Waco 2007, pet. ref'd); *Benavides v. State*, 992 S.W.2d 511, 525 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd).

In addition to the jury's rejection of appellant's self-defense theory, the evidence supporting the inclusion of a sudden passion instruction was weak at best. Defense counsel requested the sudden passion instruction based on a statement appellant made during his interview in which he said, "I guess I lost my temper." But ordinary anger or causes of a defendant's own making are not "adequate cause" and are not considered sufficient to raise the defense. *Naasz v. State*, 974 S.W.2d 418, 423 (Tex. App.—Dallas 1998, pet. ref'd); *Hernandez v. State*, 127 S.W.3d 206, 211 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Thompson v. State*, No. 05-16-01211-CR, 2017 WL 4945160, at *6 (Tex. App.—Dallas Nov. 1, 2017, pet. ref'd) (mem. op., not designated for publication).

Moreover, Johnson's testimony that appellant returned to his car before shooting suggests that even if appellant was angry, he may have had time to deliberate his actions. *See McKinney v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005) (noting that yelling and pushing do not rise to the level of adequate cause and defendant had time to deliberate his actions). There was no other evidence concerning sudden passion.

This was not a case in which there was substantial evidence that appellant was incapable of rational thought and collected action when he shot Crawford. *See Ruiz v. State*, 753 S.W.2d 681, 685 (Tex. Crim. App. 1988). Thus, the evidence cannot be characterized as "going to the very basis of the case" or vitally affecting a defensive theory, and this factor weighs against a finding of harm.

We also consider whether the arguments by counsel emphasized the faulty instructions or encouraged the jury to apply the first-degree punishment range even if it did not unanimously find that appellant did not act under the influence of sudden passion. *See Swearingen*, 270 S.W.3d at 813–14; *see also London*, 325 S.W.3d at 208–09 ("In closing argument, the State drew the jury's attention to the sudden passion issue and the language in the charge . . . ."). Here, both defense counsel and the prosecutor argued that appellant got angry and lost his temper. There was also reference to sudden passion. The State explained the law of sudden passion and argued the case did not involve sudden passion because it arose from prior provocation. Defense counsel argued there was sudden passion because appellant became angry when Crawford "jumped on" his friend. Although both parties argued sudden passion, neither addressed or even mentioned the unanimity requirement. Thus, this is not a situation in which counsel emphasized the point that was in error, converting the harm from theoretical to actual harm. *See Swearingen*, 270 S.W.3d at 814.

The charge also included a general unanimity instruction.[2] We presume the jury followed the court's instructions to render a unanimous verdict. *See Strickland*

---

[2] Standing alone, this instruction would have sufficed. This court and others have held that a general unanimity instruction is sufficient, and the court need not also specifically recite that the verdict on sudden passion must be unanimous. *See Fino v. State*, 05-17-00109-CR, 2018 WL 3829781, at *3 (Tex. App.—Dallas Aug. 13, 2018, pet. ref'd) (mem. op., not designated for publication (collecting cases); *Ross v. State*, No. 05-18-00262-CR, 2019 WL 3543578, at *10 (Tex. App.—Dallas Aug. 5, 2019, no pet.) (mem. op., not designated for publication) (same). Here, the inclusion of the additional unanimity language rendered the instruction erroneous.

*v. State*, No. 09-09-00081-CR, 2010 WL 546727, at *7 (Tex. App.—Beaumont Jan. 29, 2010, no pet.) (mem. op., not designated for publication). Further, after the jury returned their verdict, the foreperson confirmed that it was their verdict. Appellant did not request a jury poll. *See* TEX. CODE CRIM. PROC. ANN. art. 37.05; *see also Newton,* 168 S.W.3d at 259 (applying some harm standard and noting that "jury poll is the key to determining whether the charge error was harmless").

Significantly, there is nothing to suggest that the jury's sudden passion verdict was not unanimous. S*ee Bradshaw v. State,* 244 S.W.3d 490, 497–98 (Tex. App.—Texarkana 2007, no pet.); *Cornett v. State*, 405 S.W.3d 752, 761 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd). The argument that the verdict may not have been unanimous is pure speculation. *See Curry*, 222 S.W.3d at 753. The degree of harm demonstrated by an appellant, however, must be actual not theoretical. *Almanza*, 686 S.W.2d at 174.

To this end, appellant's reliance on *Sanchez* is misplaced. *See Sanchez*, 23 S.W.3d at 32 In that case, the charge instructed the jury that they could find in appellant's favor on the issue of sudden passion only if they were unanimous, and that otherwise they would have to find against appellant on the yes-no sudden passion special issue. *Id*. at 33. When asked by the court if their decision was unanimous, the jury indicated that it was not. Three jurors said they wanted to find in appellant's favor, but the court's instructions prevented them from doing so. *Id*.

at 32. Accordingly, the court concluded that the punishment charge allowed the jury to return a non-unanimous verdict on sudden passion. *Sanchez*, 23 S.W.3d at 33.

Conversely, in this case, there was no jury poll and the absence of unanimity it is purely theoretical. *See Cornett*, 405 S.W.3d at 761; *Bradshaw*, 244 S.W.3d at 498. We therefore conclude that the record does not support finding egregious harm and resolve appellant's fourth issue against him.

## C.  Modifying the Judgment

In a cross-point, the State requests that we modify the judgment to reflect that appellant used or exhibited a deadly weapon, a firearm.

We are authorized to reform a judgment to make the record speak the truth when we have the necessary information to do so. *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). Here, the record supports the requested modification. We therefore sustain the State's cross-point and modify the judgment accordingly.

## III.  CONCLUSION

We modify the judgment to reflect the jury's affirmative finding that appellant used or exhibited a deadly weapon, a firearm, and as modified, affirm.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220491F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KENVAIRIAY JEVERA SMITH,
Appellant

No. 05-22-00491-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 3, Dallas County, Texas
Trial Court Cause No. F-2076131-J.
Opinion delivered by Justice Garcia.
Justices Goldstein and Miskel
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** to reflect the jury's affirmative finding that appellant used a deadly
weapon, a firearm.
As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered October 30, 2023